698 So.2d 1337 (1997)
Moody Wayne COLLINS, Appellant,
v.
STATE OF Florida, Appellee.
No. 95-152.
District Court of Appeal of Florida, First District.
September 12, 1997.
Nancy A. Daniels, Public Defender; Carol Ann Turner, Assistant Public Defender, Tallahassee, for Appellant.
*1338 Robert A. Butterworth, Attorney General; Thomas Crapps, Assistant Attorney General, Tallahassee, for Appellee.
VAN NORTWICK, Judge.
Moody W. Collins appeals his conviction for second degree murder. Because at the trial below the prosecution improperly impeached its own witness for the purpose of admitting irrelevant and highly prejudicial evidence, we reverse and remand for a new trial.
Mr. Collins lived with his wife, Kathy, his two daughters and son, the victim of the homicide, in a rural area of Clay County. The Collins family did not have a telephone and their home was accessible only by an unpaved road several miles in length. The Collins' son, Michael, was 13 years old at the time of death. He is described in the record as "emotionally disturbed" and indeed, attended a school for "severely emotionally disturbed children." Mr. Collins was in poor physical health and was taking numerous prescription drugs.
According to Mr. Collins, he found Michael in the family tool shed holding a .22 semi-automatic loaded rifle. He instructed Michael to hand him the rifle, and Michael complied handing the rifle over butt first. The rifle discharged, startling both father and son. Michael dropped to the floor knocking over sawhorses. Mr. Collins maintained that he was trying to fasten the safety, but mistakenly hit the trigger two more times.
Kathy Collins was awakened by her daughter. Mrs. Collins testified that she found Michael in a pool of blood and her husband in a hysterical state. She backed a pick-up truck to the shed and placed Michael in the bed of the truck on his stomach. As she drove down the driveway, she told a teenage boy, who was not produced at trial, to call "911." She then drove approximately 2 miles on the dirt road to a convenience store. She called 911 from there. Michael died shortly after the emergency medical personnel arrived.
A neighbor came to the Collins residence shortly after the shooting to offer to care for the other two children. She testified that she found Mr. Collins to be distraught; and that he was "howling like a dog" and would not release his children from his grip.
The police also arrived at the Collins residence shortly after the shooting. The police inspected the area and interviewed Mr. Collins, who gave conflicting explanations of the shooting. The police then arrested Mr. Collins.
Following a jury trial, Mr. Collins was found guilty of second degree murder. He asserts, among other things, that certain prosecutorial conduct rose to the level of fundamental error. Because we agree that the state's impeachment of its own witness combined with certain prosecutorial comment so infected the trial with irrelevant prejudicial evidence as to cast doubt on the reliability of the verdict, we reverse and remand for a new trial.
At trial, the state called Kathy Collins as one of its witnesses. She testified that, after Michael was shot, she loaded him into the bed of a pick-up and traversed down a bumpy dirt road. As a result of the ride, Michael sustained numerous scrapes and bruises. While these injuries did not contribute to his death, this claimed callous act was repeatedly emphasized by the prosecutor.[1]
*1339 The record before us reflects that Mrs. Collins was not charged with any offense in connection with her son's death, yet she was consistently painted by the prosecution as a co-conspirator of sorts and her actions became a feature of the case. The state used her activities and statements as evidence of a general family ill-will against Michael which could supply a motive for the shooting.
Further, during the state's direct examination of Mrs. Collins, she was asked why she placed Michael in the bed of the truck. Mrs. Collins responded that she was essentially doing what she thought best at the time. In addition, during her direct examination Mrs. Collins denied that she advised Tamara Homer not to talk to police. Thereafter, however, the state called Mrs. Homer as a rebuttal witness, who testified over objection that Mrs. Collins told her that she put Michael in the truck bed because she didn't want to get blood on the seats since the truck was borrowed and that Mrs. Collins told her not to talk with the police. The defense objected to this line of questioning, arguing that the State had called Mrs. Collins to the stand solely to procure an answer regarding an "irrelevant piece of information" to be able to introduce impeaching hearsay evidence which would paint Mrs. Collins as an "uncaring, unloving person."
Section 90.608(1), Florida Statutes (1993), permits any party, including the party calling the witness, to impeach the credibility of a witness without regard to whether the testimony of the witness constitutes surprise or affirmative harm. See Banks v. State, 648 So.2d 766 (Fla. 1st DCA 1994). This provision in the Florida Evidence Code in effect adopted Federal Rule 607. Thus, in construing section 90.608, Florida courts should be guided by federal decisions interpreting Federal Rule 607. Ehrhardt, Florida Evidence, § 608.2 at 379 (West 1996). As Professor Ehrhardt observes, under Federal Rule 607,
[T]he federal decisions have recognized that the provision can be abused and have imposed judicial limitations on the impeachment of a party's own witness. The most frequent situation in which a limitation has been recognized is when a party calls a witness for the primary purpose of placing before the jury the impeaching evidence, which is usually a prior inconsistent statement. The federal courts have condemned this practice when the impeachment of a party's own witness is a "mere subterfuge" for placing before the jury a prior statement or other evidence attacking the character of the witness.... Since the probative value of the testimony of a witness who is called only to impeach is low, and the danger is significant that the jury will be prejudiced by the evidence used to attack credibility, the application of § 90.403 will frequently exclude attacks on the credibility of a witness who is called as a device to place the impeaching evidence before the jury.
*1340 Id. at 379-80 (footnotes omitted); see also Balogh's of Coral Gables, Inc. v. Getz, 778 F.2d 649 (11th Cir.1985), rehearing granted and opinion vacated, 785 F.2d 895 (11th Cir.1986) original opinion reinstated in pertinent part, 798 F.2d 1356 (11th Cir.1986); U.S. v. Hogan, 763 F.2d 697 (5th Cir.1985), opinion withdrawn in part on other grounds, 771 F.2d 82 (5th Cir.1985), appeal decided, 779 F.2d 296 (5th Cir.1986); U.S. v. Miller, 664 F.2d 94, 97 (5th Cir.1981), cert. denied, 459 U.S. 854, 103 S.Ct. 121, 74 L.Ed.2d 106 (1982) (prosecutor may not introduce evidence under the guise of impeachment for primary purpose of placing before the jury substantive evidence which is not otherwise admissible). We find persuasive the reasoning of the Iowa Supreme Court in interpreting a similar Iowa rule[2]:
The right given to the State to impeach its own witnesses under Iowa Rule of Evidence 607 ... is to be used as a shield and not as a sword. The State is not entitled under rule 607 to place a witness on the stand who is expected to give unfavorable testimony and then, in the guise of impeachment, offer evidence which is otherwise inadmissible. To permit such bootstrapping frustrates the intended application of the exclusionary rules which rendered such evidence inadmissible on the State's case in chief.
State v. Turecek, 456 N.W.2d 219, 225 (Iowa 1990).
The evidence that Mrs. Collins put her injured son in a truck bed and drove over bumpy roads, did not want to get her truck seats bloody, did not stop at a neighbor's house to call for help, and advised a neighbor not to talk with the police, all suggest ill-will against Michael on the part of Mrs. Collins and perhaps the entire Collins family. However, only Mr. Collins, Michael's father, was charged; and there is no evidence in the record suggesting ill-will on the part of Mr. Collins towards Michael. The evidence relating to the actions of Mrs. Collins is highly prejudicial and pertains to matters that do not logically prove or disprove a material fact pertaining to the charge of second degree murder against appellant, Moody Collins. See Taylor v. State, 583 So.2d 323 (Fla.1991).
The introduction of this irrelevant, collateral evidence regarding Mrs. Collins, combined with the improper comments of the prosecutor, could only have worked to prejudice the jury's perception of appellant. Because our review of the record reflects that the trial was so infected with the prejudicial collateral evidence regarding Kathy Collins, much of which was introduced by way of improper impeachment, we are compelled to reverse and remand for a new trial. Compare Banks v. State, 400 So.2d 188, 189 (Fla. 1st DCA 1981), citing Fulton v. State, 335 So.2d 280 (Fla.1976). Further, because we cannot say beyond a reasonable doubt that appellant would have been convicted for second degree murder absent the improper collateral evidence, we cannot apply the harmless error doctrine. See Holland v. State, 503 So.2d 1250 (Fla.1987); State v. DiGuilio, 491 So.2d 1129 (Fla.1986).
Accordingly, the cause is REVERSED and REMANDED for a new trial.
MINER and WOLF, JJ., concur.
NOTES
[1] During opening argument, the prosecutor stated among other things:

Well, immediately after the shooting, Michael is shot in the face, he's bleeding profusely, he's obviously severely wounded, this happens approximately at 7:45 in the morning, the defendant and the defendant's wife, the boy's mother, and I know this is going to seem very hard to believe, they put Michael in the metal bed of a pickup truck and Kathy Collins drove over a dirt road for seven or eight or ten minutes laying face down in the bed of a pickup truck to a Suwanee Swifty store in Putnam County just across the county line.
... Michael was not left there at the house. Michael received no medical treatment at the house. No one ran to call 911 at a neighbor's house across the street. The defendant, Moody Wayne Collins, does not go with Michael. No one renders Michael medical assistance.
... And you'll see, and it's somewhat gory, but it's the case in every murder case that we have to identify the victim and, of course, we do that through photographs.... And there will be photographs and you will see the numerous bruises and abrasions on Michael's face and on Michael's body, in addition to this bullet wound, and then you'll have to determine the cause or origin of those additional injuries; how did that happen, did it happen because his head or face was bounced up and down in the back of a pickup truck.
... The other interesting facts which you need to consider concern the defendant's statements or his account of how this shooting death occurred, and also Mrs. Collins' account of how this shooting death occurred, and were their accounts different or the same.
... Lt. Redmond [an investigating police officer] is going to tell you and Mrs. Collins, I suspect, will tell you that she approached Lt. Redmond, who is the first investigator at the scene where the shooting occurred, and suggests to Lt. Redmond that this was a suicide by Michael. Yet the evidence will show that prior to that time Mrs. Collins told the neighbor that the defendant killed her son. And you need to consider that.
During closing argument, the prosecutor stated:
What else do we know for sure? Absolutely, positively without a doubt we know that the child who is the natural son of the defendant and the son of Mrs. Collins is shot in the face, bleeds profusely in the utility trailer, and that child is transported several miles over a bumpy dirt road after being thrown in the back of a pickup truck like a sack of cement. We know that for sure.
This comment by [defense counsel] that that -that [sic] Mrs. Collins followed a proper course of action, did everything she could do, is such complete nonsense I don't even dignify it with a response.
By implicationand [defense counsel] is going to say well, you can't fault the defendant for the actions or inactions of Mrs. Collins. Yes, you can.
[2] Similar in substance to section 90.608(1), Florida Statutes (1995), rule 607 of the Iowa Rules of Evidence provides that "[t]he credibility of a witness may be attacked by any party, including the party calling him."