742 So.2d 821 (1999)
Jonathan BOWLES, Appellant,
v.
STATE of Florida, Appellee.
No. 98-2114.
District Court of Appeal of Florida, Fourth District.
August 18, 1999.
*822 Richard L. Jorandby, Public Defender, West Palm Beach, and Alisa Smith, Special Assistant Public Defender, South Orange, New Jersey, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Myra J. Fried, Assistant Attorney General, West Palm Beach, for appellee.
WARNER, C.J.
The appellant was convicted of aggravated battery after a trial during which the prosecutor called two of appellant's friends as witnesses for the sole purpose of impeaching their testimony in front of the jury with prior inconsistent statements and inadmissible bad character evidence. We hold that this was an impermissible use of impeachment, and reverse.
This incident resulted from a confrontation between the appellant and the victim in the parking lot of a bar. Appellant Bowles was with a group of friends at a nightclub. The group included Kelly Rito and her boyfriend Jason Bouldin. After the bar closed, Bowles and his friends walked out to the parking lot where a former boyfriend of Rito's, Nolan Bullen, was driving away. Bullen yelled something derogatory and Bouldin retaliated by flicking a cigarette into Bullen's vehicle. Bullen immediately stopped the vehicle, got out, and started to approach the group.
At that time a crowd, including the victim who did not know the defendant, was also walking towards Bouldin in the parking lot. Thus, it appeared to Bouldin and Bowles that Bullen was with a big group. The victim, who was drunk, appeared to be part of the group approaching Bowles. Although it is disputed as to whether the victim made any type of threatening move towards Bowles, Bowles admitted striking the victim in the face causing him to fall backwards hitting his head on the pavement and rendering him unconscious. After falling, the victim was kicked in the head, causing very serious injuries.
At trial, the main issues were whether Bowles struck the victim in self-defense and whether Bowles kicked the victim in the head. In his opening statement, the prosecutor told the jury that Bowles' friends lied to a detective and that when asked why they lied, they told the detective that they were scared of Bowles. Defense counsel objected, and the court sustained the objection.
The victim testified that he could not remember what happened the night in question. The state called Shannon Webber, who was part of the group walking towards Bowles, Bullen and Robert Davis, all of whom testified that they saw Bowles kick the victim. The state also called Kelly Rito, Bouldin's girlfriend and friend of Bowles. After the state questioned her regarding the events leading up to the incident, and before even asking her about the assault, the prosecutor began asking her about a statement she had made to the police in which she had lied about not knowing Bowles' identity. She explained that at the time she was scared. When the state asked her what she was scared of, the court asked the prosecutor to approach the bench. The prosecutor admitted to the judge that his reason for inquiring into this area was to get before the jury Rito's prior statement that she was afraid of Bowles. The court appropriately refused to permit the prosecutor to delve into this area.
Rito then testified that the victim threw up his arms as he approached Bowles, and the prosecutor brought out that she had not told this to the detective in her first statements. The prosecutor continued to question Rito regarding why she lied to the detective and then brought out that she, Bouldin, and another friend got together on their stories and lied so as not to appear involved. She also testified that she did not see Bowles kick the victim and was subsequently impeached by the prosecutor *823 with her pretrial statement in which she stated that she had seen Bowles kick the victim. The prosecutor knew that Rito would not testify as to facts in favor of the state's case, because her deposition had been taken before trial.
The state also called Bouldin to testify. His testimony was similar to that of Rito, saying that he did not see Bowles kick the victim. The prosecutor then impeached Bouldin with his prior inconsistent statement that he did witness the incident. When asked by the prosecutor why he lied to the detectives, he explained that he wanted to protect himself and did not want to get involved. On cross-examination, defense counsel also asked Bouldin why he lied to the police. In response, Bouldin stated that he lied to protect himself from arrest. Immediately after the defense completed its examination, the state requested a sidebar at which he insisted that he was now able to put before the jury Bouldin's statement that he was afraid of Bowles, because Bouldin testified that he was lying to protect himself from arrest and thus he opened the door with that statement. The court finally agreed to let the statement in but gave a limiting instruction to the jury that the statement was not coming in for the truth of the matter asserted. The specific statement which was admitted in front of the jury was Bouldin's comment to the police that "[t]hen I just protect myself from-if Jonathan finds out, I mean, I saw him, I sat there and saw him hit a kid and the kid fell on one punch. The next thing I know, the kid's in the hospital in the ICU." After presentation of a medical expert the state rested. The defense presented witnesses who said they did not see Bowles kick the victim.
In closing, the prosecutor again read to the jury the foregoing statement of Bouldin, over the strenuous objection of the defense, to show the jury that Bouldin was afraid of Bowles. In addressing Bouldin and Rito's testimony, both on initial and rebuttal argument, the prosecutor repeated over and over that they had lied. Towards the end of his rebuttal, the prosecutor posed the question to the jury "[w]hy did I call him and show that he's a liar to protect his friend?" He then answered his own question by saying "[w]ho's the aggressor here, do you think, according to Jason, the defendant's friend, one punch in the jaw. That's why I called Jason Bouldin, so you could hear from people that lied to protect this man just what they have to say." We interpret this as a reference to Bouldin's comment about the victim falling in one punch. On this evidence and argument, the jury found the defendant guilty of aggravated battery.
In Morton v. State, 689 So.2d 259, 264 (Fla.1997), which we find to be controlling, our supreme court held that "[g]enerally ... if a party knowingly calls a witness for the primary purpose of introducing a prior statement which otherwise would be inadmissible, impeachment should ordinarily be excluded." See also Collins v. State, 698 So.2d 1337, 1339 (Fla. 1st DCA 1997). From the foregoing recitation of the testimony and argument at trial, we conclude that the prosecutor's primary purpose in calling Rito and Bouldin was to impeach them with their prior inconsistent statements and in particular to get before the jury their statements that they were afraid of Bowles and were willing to lie. The prosecutor even admitted as much to the trial court. In addition, their direct testimony was unfavorable to the state, or was simply cumulative of the testimony of Bullen, Webber, or Davis on the less material points. Their lying became a feature of the entire case from opening statements to rebuttal in closing argument.
We agree with the defense that it did not open the door to permit the state to reveal Bouldin's pretrial statement that he was afraid of Bowles. Not only was the state the first to ask Bouldin on direct examination why he lied, but the reason he lied was not probative of any element of the state's case. See United States v. *824 Ince, 21 F.3d 576, 581 (4th Cir.1994)("[i]f testimony does no damage, impeachment evidence has no probative value.") In this case, the only value of the evidence was to show the bad character of Bowles by showing his friends were afraid of him.
Furthermore, the error was not harmless. Although Bowles admitted punching the victim, he denied kicking him, which was the far more serious blow. The testimony was hotly contested on this issue, and for the jury to be informed that even his friends were afraid of him and would lie to protect their safety is to severely undercut his theory of defense, both that he did not administer the kick and that the entire incident was one of self-defense. While not all of the impeaching statements were properly objected to, Bouldin's statement regarding his desire to protect himself from Bowles, the most damaging in our mind, was sufficiently preserved and by itself would merit reversal in this case. The cumulative effect of all of the improper impeachment compels that result.
For these reasons, we reverse and remand for a new trial.
SHAHOOD, J., and CHAVIES, MICHAEL B., Associate Judge, concur.