765 So.2d 763 (2000)
Derrick JAMES, Appellant,
v.
STATE of Florida, Appellee.
No. 1D99-20.
District Court of Appeal of Florida, First District.
June 26, 2000.
Rehearing Denied August 2, 2000.
Nancy A. Daniels, Public Defender and James C. Banks, Special Assistant Public Defender, Tallahassee, for Appellant.
*764 Robert A. Butterworth, Attorney General and Karla D. Ellis, Assistant Attorney General, Tallahassee, for Appellee.
VAN NORTWICK, J.
Derrick James challenges his conviction for second degree murder and carrying a concealed firearm arguing that the trial court erred in allowing the state to elicit testimony from a witness under the guise of impeachment for the purpose of introducing a prior inconsistent statement by another state witness. On the authority of Morton v. State, 689 So.2d 259 (Fla.1997), receded in part, Rodriguez v. State, 753 So.2d 29, 47 (Fla.2000), we reverse and remand for a new trial.
Appellant was indicted for the first degree murder of Michael Reynolds at the Prestige Lounge in Gadsden County. At the ensuing jury trial, the state introduced evidence that appellant was seen discharging a gun into the air and threatening that he intended to inflict personal injury to somebody that evening. The state further produced the testimony of Lamonta Peterson, who testified that he saw appellant shoot the victim. Peterson's testimony, however, was later contradicted by Alan Jackson, who testified that, after the shooting had occurred, Peterson told him that Peterson did actually not see the murder, but had heard that appellant had committed the offense. After Peterson testified, the state called Chad Jones, who testified that he is subject to blackouts due to excessive use of alcohol and that he could not recall either seeing the appellant shoot the victim or telling Roosevelt Brown, the brother of the victim, that he saw appellant shoot the victim.
The state thereafter sought to introduce, through the testimony of Roosevelt Brown, Jones' prior statement that he saw appellant murder the victim, which the state argued was inconsistent with his trial testimony. The defense objected, arguing, among other things, that it was improper to introduce Jones as a witness for the sole purpose of later impeaching him by a prior inconsistent statement and that Jones' testimony that he could not recall saying to Brown that he witnessed the shooting was not an impeachable statement. All objections were denied. When Brown was called by the state, the defense again objected, arguing that Jones' testimony was not inconsistent with the statement allegedly made to Brown. The trial court again denied the objection, but gave a instruction that the jury was to consider Brown's testimony only for the purpose of considering the credibility of Chad Jones and was not to use the testimony of Brown as evidence of guilt.
Section 90.608(1), Florida Statutes (1997), provides that:
Any party, including the party calling the witness, may attack the credibility of a witness by:
(1) Introducing statements of the witness which are inconsistent with the witness's testimony.
In Morton, the Florida Supreme Court recognized that the "literal wording of section 90.608 can be subject to abuse." Morton, 689 So.2d at 262. The court explained the potential abuse with the following hypothetical:
A prosecutor calls a witness who has made a previous statement implicating the defendant in a crime; that statement would be excluded as hearsay if offered for its truth; the prosecutor knows that the witness has repudiated the statement and if called, will testify in favor of the defendant; nonetheless, the prosecutor calls the witness for the ostensible purpose of "impeaching" him with the prior inconsistent statement. The reason that this practice appears abusive is that there is no legitimate forensic purpose in calling a witness solely to impeach him. If impeachment were the real purpose, the witness would never be called, since the most that could be accomplished is a net result of zero. As one Court put it: "The maximum legitimate effect of the impeaching testimony *765 can never be more than the cancellation of the adverse answer."
Id. at 263, quoting 2 Stephen A. Satzburg et al., Federal Rules of Evidence Manual 800 (6th ed.1994). The Morton court addressed this potential abuse by adopting the balancing approach used by the federal courts in interpreting the similar provisions of Federal Rule 607. Morton, 689 So.2d at 263-64; see also Collins v. State, 698 So.2d 1337, 1339-40 (Fla. 1st DCA 1997). Professor Ehrhardt has described the interpretation of Federal Rule 607 as follows:
[T]he federal decisions have recognized that the provision can be abused and have imposed judicial limitations on the impeachment of a party's own witness. The most frequent situation in which a limitation has been recognized is when a party calls a witness for the primary purpose of placing before the jury the impeaching evidence, which is usually a prior inconsistent statement. The federal courts have condemned this practice when the impeachment of a party's own witness is a "mere subterfuge" for placing before the jury a prior statement or other evidence attacking the character of the witness.... Since the probative value of the testimony of a witness who is called only to impeach is low, and the danger is significant that the jury will be prejudiced by the evidence used to attack credibility, the application of § 90.403 will frequently exclude attacks on the credibility of a witness who is called as a device to place the impeaching evidence before the jury.
Ehrhardt, Florida Evidence § 608.2 at 379-80 (West 1999).
In Morton, the court analyzed whether the impeachment was permissible under section 90.608(1) by first looking at the probative value of the testimony of the witness who is sought to be impeached. As the court explained:
Obviously, no single rule can be delineated to cover all of the circumstances under which parties will seek to impeach their own witnesses. Generally, however, if a party knowingly calls a witness for the primary purpose of introducing a prior statement which otherwise would be inadmissible, impeachment should ordinarily be excluded. On the other hand, a party may always impeach its witness if the witness gives affirmatively harmful testimony. In a case where a witness gives both favorable and unfavorable testimony, the party calling the witness should usually be permitted to impeach the witness with a prior inconsistent statement. Of course, the statement should be truly inconsistent, and caution should be exercised in permitting impeachment of a witness who has given favorable testimony but simply fails to recall every detail unless the witness appears to be fabricating. In addressing these issues, trial judges must have broad discretion in determining whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice or confusion.
Morton, 689 So.2d at 264.[1]
In the instant case, a review of the trial transcript reveals that, besides denying that he witnessed the shooting, Chad Jones did not testify as to any substantive matter in controversy that had not already been testified to by other prosecution witnesses. Because the testimony of Lamonta Peterson, the only witness to testify at trial to have seen the shooting, was called into doubt at trial, it is apparent that the prior inconsistent statement of Jones introduced through the testimony of Brown was important to the state's case. Further, in view of the fact that the prosecution *766 in the instant case had Roosevelt Brown available at trial and was prepared to call him upon eliciting Jones' testimony that he had no recollection, we find it unlikely that the prosecution was surprised by Jones' testimony.[2]
In summary, because the prosecution was apparently not surprised by Jones' trial testimony, because impeaching Jones' testimony was of de minimis substantive value, and because Jones' trial testimony was not affirmatively harmful to the prosecution's case, we find no evidentiary basis in the record to support any inference except that the prosecution called Jones because it wished to put before the jury the prior statement made to Brown "in the hope that the jury would miss the subtle distinction between impeachment and substantive evidenceor, if it didn't miss it, would ignore it." United States v. Webster, 734 F.2d 1191, 1192 (7th Cir.1984). Accordingly, we hold that the trial court abused its discretion in allowing the state to impeach Chad Jones with a prior statement made to Roosevelt Brown.
Further, we also hold that it was error to allow the impeachment because Jones' trial testimony that he had no recollection was not truly inconsistent with his previous statement made to Brown. See Calhoun v. State, 502 So.2d 1364, 1365 (Fla. 2d DCA 1987). On this matter, we agree with the reasoning employed in State v. Staley, 995 P.2d 1217, 1220, 165 Or.App. 395 (2000):
The controlling issue on appeal is whether it was appropriate to impeach [a witness'] asserted lack of memory by showing substantive statements that she made when her memory was fresh. As a matter of logic, that is not appropriate impeachment by inconsistent statement. The fact that a witness once stated something was true is not logically inconsistent with a subsequent loss of memory. The only thing that is inconsistent with a claimed loss of memory is evidence that suggests that the witness in fact remembers.... No part of [the witness'] testimony made it more or less likely that [the] defendant had committed the crimes with which he was charged, because no part of it was directly or indirectly related to those crimes. The only substantive testimony that [the witness] gave was that she had no substantive testimony to give. Showing the substantive statements that she allegedly made while her memory was fresh does not impeach that testimony. The fact that a witness once stated that something was true is not logically inconsistent with a subsequent loss of memory. The only thing that is inconsistent with a claimed loss of memory is evidence that suggests that the witness in fact remembers.... Because of her loss of memory, her testimony was favorable to neither party and had no tendency to make the existence of any fact that was of consequence to the case more or less probable.
(Footnotes omitted).
Finally, the error was not cured by the limiting instruction given, see Bowles v. State, 742 So.2d 821 (Fla. 4th DCA 1999), and, because the evidence of appellant's guilt is largely circumstantial and is not undisputed, we cannot say that the error was harmless beyond a reasonable doubt. See Collins, 698 So.2d at 1340.
We REVERSE and REMAND for a new trial.
BARFIELD, C.J., AND PADOVANO, J., CONCUR.
NOTES
[1] Although, in Rodriguez v. State, 753 So.2d 29, 47 (Fla.2000), the supreme court receded in part from Morton v. State, 689 So.2d 259 (Fla.1997), it did so only to the extent that Morton held "that a prior inconsistent statement cannot be used as substantive evidence in a penalty phase proceeding." Rodriguez, 753 So.2d at 47. Thus, that part of the holding and rationale in Morton on which we rely in the instant case is unaffected by Rodriguez.
[2] "Surprise is an indication that the impeachment request is not merely a device to allow the jury to consider a hearsay statement that is not substantively admissible...." Morton, 689 So.2d at 264, quoting Glen Weissenberger, Federal Evidence § 607.2 at 256-57 (2d ed.1995).