GROSS, J.
James Laur appeals his convictions for resisting arrest with violence and battery, arising out of a domestic violence incident.
We write to address one issue — the propriety of allowing the state to impeach its own witness, the victim of the domestic battery, with a prior inconsistent statement.
On May 29, 1999 at approximately 4:00 p.m., Anthony Bull was driving to work when he observed a man and a woman fighting in front of a house. Bull saw appellant, James Laur, punch Katherine Truax in the face. After Truax fell to the ground, Laur kicked her at least twice. Bull pulled over, got out of his car, and yelled for Laur to “get his hands off her.” Laur responded to Bull, “if you want a piece of me, then I’ll kick your ass too.” Bull left and called the police from a pay phone.
Officers John Sinks and Rhonda Ward-law, along with several other officers, responded to the scene of the fight as a result of Bull’s telephone call. Officer Sinks entered the home and found Truax sitting on the couch, distraught and crying with blood and fresh scrapes on both knees. She appeared to be intoxicated.
Laur stood in the living room, shouting and yelling obscenities at the officers. Laur demanded that the officers leave his house. Based on the apparent battery of Truax, an officer decided to arrest Laur. After being told that he was being placed under arrest, Laur responded that he was not going to jail. An officer grabbed Laur’s arm and a fight broke out. Laur refused to put his hands behind his back and began aggressively swinging his arms.
During the attempt to control Laur, officers were “knocked around the house,” breaking tables and a window. At one point Officer Sinks was pushed into the living room wall. Laur punched Officer Sinks several times during the struggle. Laur hit Officer Wardlaw with a closed fist in the back of her head, throwing her into a wall so that she cut her nose. In all, six officers participated in the melee. Finally, the officers used a stun gun to subdue Laur.
The state charged Laur with battery of a law enforcement officer (Wardlaw), resisting arrest with violence, and battery of Truax.
The case proceeded to a jury trial. The state called Truax to testify. She said that she had been in a relationship with Laur for two years and was living with him at the time of his arrest. She admitted that she and Laur had been “arguing,” and “hollering pretty loud” on May 29th, but stated that they were not physically fighting prior to the officers’ arrival. She denied having any injuries, cuts, or abrasions on the day of the arrest, but speculated that scrapes on her knees may have been due to her job with a tree service. She admitted to drinking on the day of the fight and agreed that she was shaken and upset. However, Truax explained that she *454 was crying because the police were beating up her boyfriend, rather than because of her altercation with Laur.
Truax denied telling the police that Laur hit her. In fact, Truax claimed that the police never questioned her before they attempted to arrest Laur. Truax stated that Laur was sitting down when the police attempted to arrest him, and that the police hit Laur with four stun guns.
After Truax’s testimony, the prosecutor asked to recall Officer Wardlaw. Defense counsel objected to the state’s impeachment of its own witness. The trial court overruled the objection. Officer Wardlaw testified that prior to Laur’s arrest, Truax told the officer that “she [Truax] had been in a fight with [Laur] and that she had been hit.”
The jury returned a not guilty verdict as to the charge of battery on a law enforcement officer and guilty verdicts on the charges of simple battery and resisting arrest with violence.
Laur contends that under Morton v. State, 689 So.2d 259 (Fla.1997), receded from on other grounds, Rodriguez v. State, 753 So.2d 29 (Fla.), cert. denied, — U.S. -, 121 S.Ct. 145, 148 L.Ed.2d 96 (2000), the trial court erred in allowing the state to impeach its own witness with a prior inconsistent statement.
Section 90.608(1), Florida Statutes (2000), permits any party, “including the party calling the witness,” to attack the credibility of a witness by “[introducing statements of the witness which are inconsistent with the witness’s present testimony.” Recognizing that this provision of the evidence code can be abused, Morton imposed limitations on the impeachment of a party’s own witness. After reviewing the treatment of this issue in the federal courts, the supreme court wrote in Morton:
Generally, however, if a party knowingly calls a witness for the primary purpose of introducing a prior statement which otherwise would be inadmissible, impeachment should ordinarily be excluded. On the other hand, a party may always impeach its witness if the witness gives affirmatively harmful testimony. In a case where a witness gives both favorable and unfavorable testimony, the party calling the witness should usually be permitted to impeach the witness with a prior inconsistent statement. Of course, the statement should be truly inconsistent, and caution should be exercised in permitting impeachment of a witness who has given favorable testimony but simply fails to recall every detail unless the witness appears to be fabricating. In addressing these issues, trial judges must have broad discretion in determining whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice or confusion.
689 So.2d at 264.
In this case, the domestic battery victim was not called for the primary purpose of introducing her prior statement to Officer Wardlaw. There was a legitimate forensic purpose in calling the witness. Truax gave some testimony that supported the state’s case; she acknowledged that she and Laur had been loudly arguing, that she had been drinking, that she was crying and shaken, and that she may have had scrapes on her knees. See Bateson v. State, 761 So.2d 1165, 1170 (Fla. 4th DCA 2000) (applying Morton and finding no error in allowing impeachment where witness gave testimony supportive of the state’s case in addition to prior statement used to impeach her). The prior statement was truly inconsistent with Truax’s trial testimony; it was not introduced to fill the void of an absence of recollection. Cf., James v. State, 765 So.2d 763, 766 (Fla. 1st DCA 2000) (holding that witness’s trial testimony that “he had no recollection” was not truly inconsistent with his *455 previous statement that “he saw [the defendant] murder the victim”).
Truax also gave testimony that was “affirmatively harmful” to the state’s case; she denied that any physical abuse had occurred. On the issue of Truax’s credibility, her prior statement had probative value. As is common in cases of domestic violence, the credibility of the victim’s trial testimony was an issue. See Williams v. State, 714 So.2d 462, 463 (Fla. 3d DCA 1997) (observing “[a]s has become lamentably common in cases of domestic violence, [the victim’s] testimony before the jury was diametrically contrary to her original statements to the police”). The victim’s words uttered at the time of the incident, before the passage of time healed her physical and emotional wounds, were important factors for the jury to consider in evaluating the truthfulness of her trial testimony.
The probative value of the statement on Truax’s credibility was not substantially outweighed by the danger of unfair prejudice or confusion. The testimony of the disinterested witness, Anthony Bull, provided evidence of the battery apart from the testimony of the victim. The officers testified to the recency of Truax’s injuries and her emotional state. The impeachment testimony was limited to one witness and one statement; it did not become a central feature in the trial. This was unlike the situation in Morton, where the cumulative effect of continual impeachment of many witnesses “made it all the more difficult for the jury to separate substantive evidence” from impeachment evidence. 689 So.2d at 264.
AFFIRMED.
DELL and STEVENSON, JJ., concur.