IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2011-NMSC-035

Filing Date: August 2, 2011

Docket No. 30,257

STATE OF NEW MEXICO,

      Plaintiff-Appellee,

v.

RAMON LOPEZ,

      Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF SOCORRO COUNTY
Matthew G. Reynolds, District Judge

Hugh W. Dangler, Chief Public Defender
Nina Lalevic, Assistant Appellate Defender
Santa Fe, NM

for Appellant

Gary K. King, Attorney General
Andrea Sassa, Assistant Attorney General
Santa Fe, NM

for Appellee

## OPINION

**SERNA, Justice.**

**{1}** Defendant Ramon Lopez was convicted by a jury of multiple crimes, including first-degree felony murder, contrary to NMSA 1978, Section 30-2-1(A)(2) (1994), with first-degree criminal sexual penetration (CSP), contrary to NMSA 1978, Section 30-9-11(C)(2) (1995) (amended 2009), as the underlying felony. Defendant invokes this Court's appellate jurisdiction over sentences for life imprisonment, contained in Article VI, Section 2 of the New Mexico Constitution and Rule 12-102(A)(1) NMRA. We address two of the issues Defendant has raised on appeal: whether Defendant's right to confront witnesses who

1

testified against him was violated by the admission of the preliminary hearing testimony of an unavailable witness, and whether the district court erred in allowing the State to impeach its own witness with otherwise inadmissible hearsay. We conclude that the district court committed reversible error by allowing the hearsay to be admitted under the auspices of the State's impeachment of the preliminary hearing testimony of the unavailable witness.

**{2}** Crystal Calderella (Victim) last was seen alive the night of April 12, 2001, with Defendant, Greg Romero, and others who were consuming drugs and alcohol at Victim's home in Socorro, New Mexico. On April 15, 2001, Victim's body was discovered in her home, her clothes partially removed. There were bruises and contusions on Victim's neck and lower legs, and blood on the back of Victim's head. Semen, later shown to be Defendant's, was found in Victim's vagina. Defendant was charged with Victim's murder after being arrested on an unrelated charge.

**{3}** At Defendant's preliminary hearing, Romero testified under oath about the events that occurred during the evening of Victim's death. Before trial, the State informed the district court that it was unable to locate Romero, who had absconded from probation in California, and explained the efforts that had been undertaken to locate him. The district court permitted the State to introduce Romero's preliminary hearing testimony via tape under the hearsay exception for unavailable witnesses contained in Rule 11-804(A)(5) and (B)(1) NMRA. Defendant argues that the admission of Romero's preliminary hearing testimony violated the Confrontation Clauses contained in the Sixth Amendment to the United States Constitution and Article II, Section 14 of the New Mexico Constitution.

**{4}** "We first determine whether the preliminary hearing testimony was properly admitted under the Rules of Evidence." *State v. Henderson*, 2006-NMCA-059, ¶ 8, 139 N.M. 595, 136 P.3d 1005. Only if the preliminary hearing testimony was properly admitted do we address the Confrontation Clause issue. *Id.* Defendant argues that the preliminary hearing testimony was improperly admitted because Defendant did not have an opportunity for a meaningful cross-examination of Romero. We review the admission of evidence pursuant to an exception or an exclusion to the hearsay rule under an abuse of discretion standard. *State v. McClaugherty*, 2003-NMSC-006, ¶ 17, 133 N.M. 459, 64 P.3d 486.

**{5}** "A hearsay statement consists of an out-of-court statement offered to prove the truth of the matter asserted," and is inadmissible as substantive evidence unless it falls within an exclusion or exception to the hearsay rule. *Id.* Rule 11-804(A)(5) defines as unavailable a witness who "is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance . . . by process or other reasonable means." A statement of an unavailable witness is admissible if the unavailable witness's "[t]estimony [was] given as a witness at another hearing of the same or a different proceeding . . . [and] if the party against whom the testimony is now offered . . . had an opportunity and similar motive to develop the testimony by direct, cross or redirect examination." Rule 11-804(B)(1); *see also State v. Gonzales*, 113 N.M. 221, 226, 824 P.2d 1023, 1028 (1992) (stating that the motives for cross-examination at the preliminary hearing and the trial must

2

be similar, but need not be identical).

**{6}** Whether a party had an opportunity and similar motive to develop testimony must be determined on a case-by-case basis. *Gonzales* addressed a situation where the defendant had an opportunity to cross-examine a witness at a preliminary hearing, but at trial, when the witness was unavailable to testify, the defendant's theory of his defense had changed from self-defense to identification. 113 N.M. at 225-26, 824 P.2d at 1027-28. We noted that the Court of Appeals had set forth a "per se rule that absent extraordinary circumstances preliminary hearing testimony may be admitted at trial if the witness is unavailable because the motive to cross-examine is similar." *Id.* at 226, 824 P.2d at 1028 (citing *State v. Massengill*, 99 N.M. 283, 285, 657 P.2d 139, 141 (Ct. App. 1983)). Despite the change in the defendant's theory, *Gonzales* concluded that because the defendant "was given the opportunity to cross-examine the witness at the preliminary hearing, [the] defendant was not denied the right to confront the witness against him." *Id.* at 227, 824 P.2d at 1029.

**{7}** In *Henderson*, the preliminary hearing testimony of two unavailable witnesses was admitted at trial. 2006-NMCA-059, ¶ 7. "[T]he trial court acknowledged that [the d]efendant could not have cross-examined [the unavailable witnesses] at the preliminary hearing on all issues that were relevant to his defense because all the issues were not known at that time." *Id.* The Court of Appeals nevertheless concluded that the defendant had an adequate opportunity for cross-examination because he was able to cross-examine the witness "about whether any crime was committed and whether [the d]efendant was involved." *Id.* ¶ 12. The defendant, therefore, "had an 'opportunity and similar motive' to cross-examine [the witness] at the preliminary hearing as he would have at trial." *Id.*

**{8}** In this case, the purpose of the preliminary hearing was to determine whether "there [was] probable cause to believe that the defendant committed an offense." Rule 5-302(C) NMRA; *see State ex rel. Whitehead v. Vescovi-Dial*, 1997-NMCA-126, ¶ 5, 124 N.M. 375, 950 P.2d 818 ("The primary purpose of the preliminary examination is to provide an independent evaluation of whether the state has met its burden of demonstrating probable cause."). At the preliminary hearing, Defendant questioned Romero about whether Romero witnessed Defendant engage in sexual intercourse with Victim; whether Defendant assaulted Victim, or removed Victim's clothes; and whether Romero witnessed anything "unusual" happen between Victim and Defendant that night. At the preliminary hearing, Defendant argued that there was insufficient evidence to establish probable cause that Defendant committed a crime, and that the case should not be bound over for trial; his motive for cross-examining Romero, therefore, was to show that Defendant did not rape and murder Victim.

**{9}** Defendant's motive at trial likewise was to demonstrate that he was not guilty of raping and murdering Victim. During both proceedings, Defendant's motive was to discredit the State's case and to argue that the evidence did not establish his guilt. We conclude, therefore, that because Defendant had an opportunity and similar motive to cross-examine Romero at the preliminary hearing as he did at trial, the district court did not abuse its discretion in admitting Romero's preliminary hearing testimony at trial.

**{10}** Having determined that the Rules of Evidence were not violated by the admission of Romero's preliminary hearing testimony, we turn to the constitutional question. Claimed violations of the Confrontation Clause are questions of law which we review de novo. *Id.* ¶ 6.

**{11}** Under the Sixth Amendment to the United States Constitution, all criminal defendants "shall enjoy the right . . . to be confronted with the witnesses against him." Testimonial statements satisfying the Rules of Evidence do not necessarily satisfy the requirements of the Confrontation Clause. *Crawford v. Washington*, 541 U.S. 36, 50-51, 68 (2004) ("Leaving the regulation of out-of-court statements to the law of evidence would render the Confrontation Clause powerless to prevent even the most flagrant inquisitorial practices."). When admitting testimonial statements, the Confrontation Clause requires that the accused have a prior opportunity for cross-examination. *Id.*; *accord United States v. Aldridge*, 413 F.3d 829, 836 (8th Cir. 2005) (Bye, J., concurring in part and dissenting in part) ("The main and essential purpose of confrontation is to provide a meaningful opportunity for the cross-examination of the adverse witness."). Once a defendant has tested the reliability of an unavailable witness's testimony against him in the "crucible of cross-examination," the demands of the Confrontation Clause have been met. *Crawford*, 541 U.S. at 61, 68. When a witness testifies under oath at a preliminary hearing, admission of that preliminary hearing testimony does not violate the Confrontation Clause if: "(1) the witness is unavailable; and (2) the defendant had a prior opportunity to cross-examine the statement that is now being offered into evidence against him." *Henderson*, 2006-NMCA-059, ¶ 16 (emphasis omitted).

**{12}** Defendant had an opportunity to cross-examine Romero, and actually did cross-examine him, on the "statement that is now being offered into evidence against him." *Id.* (emphasis omitted). At both the preliminary hearing and at trial, Defendant was facing the same charges, was represented by the same defense counsel, and had the same motive to cross-examine Romero. *See id.* ¶ 19. We conclude that the opportunity to cross-examine Romero at the preliminary hearing satisfied the demands of the Confrontation Clause of the Sixth Amendment.[1] The introduction of Romero's testimony at the preliminary hearing, therefore, did not run afoul of the Rules of Evidence or the Sixth Amendment.

**{13}** Defendant next argues that the district court erred in permitting the State to impeach Romero's preliminary hearing testimony with a prior inconsistent statement. In his

---

[1] We do not reach Defendant's confrontation rights under Article II, Section 14 of the New Mexico Constitution as that argument was not preserved. *See State v. Leyva*, 2011-NMSC-009, ¶ 49, 149 N.M. 435, 250 P.3d 861 (stating that when a state constitutional provision has never been interpreted as providing greater protections than its federal counterpart, the proponent must make the arguments necessary for the court to conduct an interstitial analysis).

preliminary hearing testimony, Romero denied that he told an acquaintance, Barbara Olguin, that he saw Defendant choke and rape Victim. After Romero's preliminary hearing testimony was played for the jury, the State was permitted to call Olguin to impeach Romero's statement. Before Olguin testified, the district court gave a limiting instruction to the jury, stating that her testimony was to be used solely for the purpose of impeachment. Olguin testified that a few weeks after Victim's death, Romero told her that he saw a physical altercation between Defendant and Victim on the night Victim died and Victim hit her head on a table edge and was knocked unconscious. Olguin testified that Romero said he saw Defendant crawl on top of Victim, hold her by the mouth, choke her, and rape her.

{14}    Admission of a prior inconsistent statement is within "the sound discretion of the trial court . . . and will not be reversed absent an abuse of that discretion." *Davis*, 97 N.M. at 133, 637 P.2d at 564. A trial court abuses its discretion when a "ruling is clearly against the logic and effect of the facts and circumstances of the case," such that it can be characterized "as clearly untenable or not justified by reason." *State v. Dominguez*, 2007-NMSC-060, ¶ 16, 142 N.M. 811, 171 P.3d 750, *holding modified on other grounds by State v. Garcia*, 2011-NMSC-003, ¶¶ 17-18, 149 N.M. 185, 246 P.3d 1057 (internal quotation marks and citation omitted).

{15}    If offered for the truth of the matter asserted, Olguin's testimony of Romero's out-of-court statements would constitute inadmissible hearsay. *See McClaugherty*, 2003-NMSC-006, ¶ 17. Out-of-court statements are not hearsay, however, if they are offered to impeach a witness on a material matter inconsistent with the testimony presented at trial. *See* Rule 11-613 NMRA; *State v. Davis*, 97 N.M. 130, 133, 637 P.2d 561, 564 (1981); *State v. Carlton*, 82 N.M. 537, 542, 484 P.2d 757, 762 (Ct. App. 1971). "When impeaching with prior inconsistent statements not made under oath, it is the fact of the inconsistency that is admissible, not the substantive truth or falsity of the prior statement." *State v. Macias*, 2009-NMSC-028, ¶ 20, 146 N.M. 378, 210 P.3d 804. The declarant of a hearsay statement admitted into evidence may be attacked for lack of credibility in the same manner as if the declarant had testified as a witness. Rule 11-806 NMRA.

{16}    Rule 11-607 NMRA "allow[s] a party to attack the credibility of its own witnesses." *Id.* ¶ 21. Courts and commentators are in general agreement that a witness may not be called and then impeached solely for the purpose of evading the rules of evidence. *See United States v. Logan*, 121 F.3d 1172, 1174-75 (8th Cir. 1997) ("Courts must be watchful that impeachment is not used as a subterfuge to place otherwise inadmissible hearsay before the jury." (internal quotation marks and citation omitted)); *United States v. Webster*, 734 F.2d 1191, 1192 (7th Cir. 1984) ("[I]t would be an abuse of the rule [permitting impeachment], in a criminal case, for the prosecution to call a witness that it knew would not give it useful evidence, just so it could introduce hearsay evidence against the defendant in the hope that the jury would miss the subtle distinction between impeachment and substantive evidence-or, if it didn't miss it, would ignore it."); *accord United States v. Morlang*, 531 F.2d 183, 190 (4th Cir. 1975); *State v. Hunt*, 378 S.E.2d 754, 757 (N.C. 1989); 1 Kenneth S.

Broun et al. eds., *McCormick on Evidence* § 39, at 168 (6th ed. 2006). Only if the primary purpose of the proffered testimony is to provide evidence, and *not* as a back-door attempt to introduce otherwise inadmissible hearsay under the auspices of impeachment, should a court permit that evidence to be presented to the jury.

{17}    This Court, in *State v. Brown*, stated that a party may not call a witness for the primary purpose of impeaching a witness with a prior statement which otherwise would be inadmissible hearsay. 1998-NMSC-037, ¶ 52, 126 N.M. 338, 969 P.2d 313. In *Brown*, we used the Florida Supreme Court's approach to determining whether a witness's testimony has a proper primary purpose, set forth in *Morton v. State*, 689 So.2d 259, 264 (Fla. 1997) (*abrogated in part by Rodriguez v. State*, 753 So.2d 29, 47 (Fla. 2000)). 1998-NMSC-037, ¶¶ 50-53. The *Morton* approach scrutinizes the content of the witness's testimony to ascertain whether it contains evidence that is both favorable and unfavorable to the proponent. *Morton*, 689 So.2d at 264.

{18}    Although this Court has not engaged in substantial analysis as to the meaning of "favorable" and "unfavorable" in *Morton*, Florida's courts have reviewed the analysis and we look to their cases as instructive. *See State v. Richards*, 843 So.2d 962, 964-65 (Fla. Dist. Ct. App. 2003) (holding that the state's impeachment of its own witness was proper where the witness's favorable testimony "place[d] the defendant in proximity to . . . the victim throughout the evening of the crime [and] supplie[d] a possible motive for the shooting."); *Owens v. State*, 817 So.2d 1006, 1008 (Fla. Dist. Ct. App. 2002) (finding impeachment of the state's own witness proper where the witness's unfavorable testimony was materially inconsistent with prior statements and directly contradicted the defendant's guilt). These cases indicate that the primary purpose of a witness's testimony is characterized as favorable when that testimony goes to a substantive matter in controversy, not simply whether it is merely relevant. *See State v. Varela*, 1999-NMSC-045, ¶ 29, 128 N.M. 454, 993 P.2d 1280 ("If the prosecution elicits relevant, substantive testimony from [a] witness [it calls], [the prosecution] may impeach its witness with prior inconsistent statements about the same matter being testified to at trial." (internal quotation marks and citation omitted)); *James v. State*, 765 S0.2d 763, 765 (Fla. Dist. Ct. App. 2000). "If the witness's testimony is useful to establish any fact of consequence significant in the contest of litigation, the witness may be impeached by means of a prior inconsistent statement as to any other matter testified to." McCormick, *supra*, at 169. Even if testimony is relevant and substantive, however, if it is cumulative or duplicative, evidence may not be introduced for the primary purpose of later impeaching that testimony. *See Ruff v. State*, 31 So.3d 833, 838 (Fla. Dist. Ct. App. 2010) (finding impeachment of its own witness was improper where the witness's testimony was duplicative and "not substantive evidence of any facts in dispute"); *James v. State*, 765 So.2d 763, 765 (Fla. Dist. Ct. App. 2000) (finding impeachment of the state's own witness improper where the witness "did not testify as to any substantive matter in controversy that had not already been testified to by other prosecution witnesses").

{19}    Unfavorable testimony, on the other hand, is that which is "affirmatively harmful" to the proponent of the witness's case. *See Brown*, 1998-NMSC-037, ¶ 52 (quoting *Morton*,

6

689 So.2d at 264); *see also Laur v. State*, 781 So.2d 452, 454-55 (Fla. Dist. Ct. App. 2001) (finding the state's impeachment of its own witness was proper where she provided both favorable testimony and "affirmatively harmful" testimony, including denying the crime had occurred); 4 Clifford S. Fishman, *Jones on Evidence* § 26:27, at 365 (7th ed. 2000) (stating that testimony must be "affirmatively harmful," not "merely disappointing").

{20}     The State suggests that Romero's testimony was both favorable and unfavorable to its case against Defendant, and that Olguin's testimony was proper for the impeachment of the unfavorable portion of Romero's testimony. According to the State, Romero's favorable testimony established the events of the last night of Victim's life, identified Victim's car, and corroborated the testimony of other witnesses. *See Varela*, 1999-NMSC-045, ¶ 30 (citing corroborating testimony as favorable evidence for the State). The State contends that Romero's unfavorable testimony was his statement that he did not see anything "unusual" happen between Defendant and Victim, weakening the case against Defendant. The State used Olguin's testimony of Romero's prior inconsistent statement to attack the credibility of that statement.

{21}     We are not convinced that the State introduced Romero's testimony for the primary purpose of providing evidence material to its prosecution. Much of Romero's "favorable" testimony pertained to innocuous events surrounding the purchase and use of drugs on the night of Victim's death, to which other live witnesses testified at trial. Testimony concerning the purchase and use of drugs is immaterial in establishing Defendant's guilt in Victim's death. Moreover, Defendant largely conceded the events set forth in Romero's testimony in his opening statements to the jury. Romero's "unfavorable" testimony, that nothing "unusual" was afoot when he left Victim's home on the night of her death, was consistent with the State's theory of the case and leveled no affirmative harm in the State's direction.

{22}     The State knew with certainty before trial that the recorded preliminary hearing testimony contained Romero's denial that he made statements to Olguin inculpating Defendant. Even if there had been anything in Romero's preliminary hearing testimony that the State could plausibly claim it needed at trial, the State could have introduced that portion of the preliminary hearing testimony without introducing the denials that purportedly gave rise to the reason for introducing Olguin's otherwise inadmissible hearsay. The State did not have a proper primary purpose of admitting Romero's testimony to provide evidence material to its case. We agree with Defendant that the introduction of Romero's testimony was for the purpose of impeaching that testimony with Olguin's testimony as to Romero's otherwise inadmissible statements. Accordingly, we hold that the district court abused its discretion by permitting Olguin to testify.

{23}     For the foregoing reasons, we reverse Defendant's convictions and remand the case to district court for a new trial.

{24}     **IT IS SO ORDERED.**

 

_____
**PATRICIO M. SERNA, Justice**

**WE CONCUR:**

_____
**CHARLES W. DANIELS, Chief Justice**


_____
**PETRA JIMENEZ MAES, Justice**


_____
**RICHARD C. BOSSON, Justice**


_____
**EDWARD L. CHÁVEZ, Justice**

**Topic Index for *State v. Lopez*, Docket No. 30,257**

| **CT** | **CONSTITUTIONAL LAW** |
|---|---|
| CT-CT | Confrontation |
| CT-RF | Right to Confrontation |

| **EV** | **EVIDENCE** |
|---|---|
| EV-AV | Availability of Witness |
| EV-CX | Cross-Examination |
| EV-PA | Prior Acts or Statements |
| EV-WT | Witnesses |