2003-NMSC-006

64 P.3d 486

**STATE of New Mexico,**
**Plaintiff–Appellee,**

v.

**Charles I. McCLAUGHERTY,**
**Defendant–Appellant.**

**No. 27,100.**

Supreme Court of New Mexico.

Feb. 4, 2003.

Freedman, Boyd, Daniels, Hollander, Goldberg & Cline, P.A., John D. Cline, Albuquerque, for Appellant.

Patricia A. Madrid, Attorney General, Anita Carlson, Assistant Attorney General, Santa Fe, for Appellee.

## OPINION

MINZNER, Justice.

{1} Charles McClaugherty (Defendant) appeals from a judgment and sentence en-

tered following a jury trial and from an order denying a motion for a new trial. The jury convicted Defendant of the following crimes: first degree murder (deliberate), contrary to NMSA 1978, § 30–2–1(A)(1) (1994); first degree murder (felony murder), contrary to Section 30–2–1(A)(2); aggravated battery (inflicting great bodily harm), contrary to NMSA 1978, § 30–3–5(C) (1969); assault with intent to commit a violent felony (murder), contrary to NMSA 1978, § 30–3–3 (1977); tampering with evidence, contrary to NMSA 1978, § 30–22–5 (1963); conspiracy to commit tampering with evidence, contrary to NMSA 1978, § 30–28–2(B)(3) (1979); and two counts of shooting at or from a motor vehicle (inflicting great bodily harm), contrary to NMSA 1978, § 30–3–8(B) (1993).

■ {2} The trial court sentenced Defendant to life in prison for first degree murder plus seventeen years suspended on the remaining convictions.[1] We have jurisdiction pursuant to Article VI, Section 2 of the New Mexico Constitution and Rule 12–102(A)(1) NMRA 2003 (setting out appellate jurisdiction of the Supreme Court).

{3} Defendant raises two issues on appeal. First, Defendant contends that the trial court erred in not granting him a new trial based upon newly discovered evidence concerning an alleged understanding between the State and one of its witnesses. Second, Defendant contends that the trial court erred in permitting the prosecutor to ask him about an alleged admission of guilt to his sister and his roommate, neither of whom testified. We conclude that permitting the cross-examination was reversible error, because it put information before the jury contrary to the rules of evidence. *See* Rule 11–802 NMRA 2003; Rule 11–613 NMRA 2003. Because we reverse as to the second issue, we need not decide the first issue

---

1. The trial court "merged" count two into count one for sentencing purposes, so that Defendant was not subjected to double jeopardy. Although the common law "merger" doctrine has not been adopted in New Mexico, *State v. Kersey*, 120 N.M. 517, 522 n. 2, 903 P.2d 828, 833 n. 2 (1995), when a trial court has convicted a defen-

dant under multiple counts of first degree murder for one murder committed, we treat the convictions "as a general verdict of guilt for first degree murder based on two alternative theories." *State v. Reyes*, 2002–NMSC–024, ¶ 18, 132 N.M. 576, 52 P.3d 948.

raised by Defendant.[2]

# I

{4} This case centers around the shootings of Vincent Martinez and Ricky Solisz, which resulted in the death of Solisz, in the early morning of June 19, 1999. The second issue concerns the cross-examination of Defendant concerning statements he allegedly made to his sister and his roommate shortly after the shootings.

{5} On June 18, 1999, Defendant, Nachima Coriz, Rodrigo Dominguez and others threw a party at Defendant's apartment in Northeast Albuquerque. At the party that night, Defendant and Dominguez engaged in an argument with Solisz over the telephone and eventually agreed to meet Solisz in order to fight. Defendant, Dominguez, Coriz and several other people left the party and drove to the agreed location in two vehicles to meet Solisz and others. Defendant rode in the front seat of a Cadillac driven by Dominguez, with two other people in the back seat. Coriz rode in the back seat of the other car, a white Suzuki. Dominguez carried a .40 caliber Glock handgun, and Coriz carried a shotgun. Coriz testified that Defendant had a gun, but Defendant testified that he was unarmed. One of the other young men carried a .22 caliber handgun. Solisz, Martinez and Eloy Sandoval traveled to the site in a Dodge Neon.

{6} The two groups met each other in a shopping center parking lot close to Defendant's apartment. The Neon and Cadillac approached each other in the parking lot from opposite directions. The Suzuki was following about fifty feet behind the Cadillac. As the Cadillac and Neon drove side-by-side, Martinez jumped out of the Neon holding a baseball bat. At that moment shots were fired at the Neon from the Cadillac. Martinez was shot in the arm and the abdomen, and he immediately retreated back into the Neon. Solisz was shot in the head while in the Neon, and died immediately.

{7} Altogether, approximately fourteen bullets struck the Neon. Police found Rem-

ington and CCI .40 caliber shell casings at the scene. An expert identified the bullet that killed Solisz as a CCI bullet. Police found the CCI casings at one spot of the scene and the Remington casings at another spot, indicating that two .40 caliber Glocks may have been fired at the scene. Police also found several live Remington .40 caliber rounds en route from the parking lot to Defendant's apartment.

{8} Dominguez and Coriz returned from the incident to Defendant's apartment. Defendant arrived soon afterwards. Dominguez eventually left the apartment. Later in the morning, as the police were knocking on Defendant's apartment door, Defendant and Coriz threw a Glock handgun and a shotgun out the window to Dominguez, who had returned to retrieve the guns left at the apartment. Then the two jumped out the apartment window and fled from the police. The police found one Glock and a shotgun near the apartment. The police expert could not determine if the Glock that was found fired the CCI bullet that killed Solisz. No one at trial could account for the second Glock.

{9} Defendant and Coriz hid in a nearby apartment until the evening of June 19, 1999. At that time, Coriz turned himself in to the police and gave a statement inculpating Defendant and Dominguez. Police later arrested Defendant.

{10} Defendant's trial began on February 28, 2001. At trial, Coriz testified against Defendant. Coriz was the only witness to identify Defendant as one of the men who fired a gun on the night of the murder. Coriz claimed that Defendant carried a pistol to the scene on the night of the murder. He testified that he saw Defendant and another person get out of the Cadillac and run toward a fence that bordered the parking lot. While running, Coriz testified, Defendant turned and shot at the Neon between five and seven times, then turned back and jumped over the fence. Coriz testified that after they returned to the apartment, he heard Defendant tell his sister that they "went and shot at some people." Defendant

---

**2.** Defendant seeks reversal of his convictions as the remedy for each issue. Therefore, by granting the relief sought for the second issue, we grant all that Defendant has requested.

testified at trial and denied that he handled or fired a gun that night.

{11} On cross-examination of Defendant, the prosecutor attempted to impeach Defendant's assertion with statements that Sarah Tucker and Sherri Goen, Defendant's sister and roommate respectively, apparently gave to police. These statements were never introduced into evidence, and neither the sister nor the roommate were called as witnesses at trial. Tucker and Goen allegedly said that Defendant admitted to them, when he returned to his apartment on the night of the shooting, that he had shot a gun. After the prosecutor asked Defendant if he told his sister and roommate what happened that night, Defendant answered: "I had told them, yes, I was there and I ran." The prosecutor then asked:

Q: Is that all you told them?

A: I'm pretty sure.

Q: You're aware I've got statements? You got copies of the statements.

A: Yes.

Q: So why are they lying about you then?

A: Can you tell me what you're referring to?

{12} At this point defense counsel objected to the State's line of questioning. During the subsequent bench conference, defense counsel argued to the court:

Defense: He's trying to impeach him with hearsay that's never been admitted into evidence.

State: Inconsistent statements of admission.

Court: Do we have statements from these people that say something opposite to what he's saying?

State: When they were talking about the shooting, at first he-

Court: I think what you're doing is the objection is really to the form of the question. You can ask him, "Would it surprise you if somebody else said this, like as far as something—you know, why are they lying about you?" You're assuming facts not in evidence, so I'm going to sustain the objection on that particular ground, okay?

{13} The prosecutor then returned to the cross-examination by asking Defendant, "[s]ir, would it surprise you to hear that your sister, Sarah Tucker, gave a statement to the police 6/19/99, the day after or the day, that morning, that said that you admitted to her that you shot-." At this point defense counsel objected again. At the bench conference, defense counsel argued:

Defense: He is attempting to impeach him with extrinsic evidence of which I have no opportunity to cross-examine him with, under what circumstances or anything else.

Court: Anything for your record?

State: Your Honor, [Sarah] Tucker is actually his sister. She's been subpoenaed. She's been available. She won't come up to our office. She has had the opportunity to interview her.

Court: The question that's being asked is whether or not he agrees with this or not is not—I mean because this person can always be brought in to explain it, so I'm going to allow him to proceed and allow him to ask the question, so I'm going to overrule the objection.

{14} The prosecutor then continued to question Defendant:

Q: Do you remember the question?

A: Yes.

Q: Does it surprise you?

A: Yes.

Q: How about your roommate, Sherri Goen? Does it surprise you that she also made the same statement?

A: Yes.

Q: That you admitted shooting?

A: Yes.

Q: Bragged about it?

A: Yes.

{15} The jury found Defendant guilty of all charges, and the trial court convicted him on March 7, 2001. Defendant filed a motion for a new trial on August 16, 2001, based on newly discovered evidence that an agreement existed between Coriz and the State to secure Coriz's testimony against Defendant. This Court remanded to the trial court for a hearing on Defendant's motion. The trial

court conducted an evidentiary hearing on January 4, 2002, and subsequently denied Defendant's motion. Defendant appealed his conviction based upon the denied motion as well as contending that the trial court abused its discretion in permitting the prosecutor to cross-examine Defendant about the contents of hearsay statements, which were never admitted into evidence.

## II

{16} Defendant argues that the statements made by Tucker and Goen to the police were inadmissible hearsay and should not have been described by the prosecutor in detail on cross-examination. He claims that the prosecutor's description of the statements during cross-examination violated the rules of evidence as well as the Confrontation Clauses of both the federal and state constitutions. Defendant asserts further that the prosecutor's use of the statements was prosecutorial misconduct. The State counters that the statements were properly used to impeach Defendant's own testimony. The State also argues that Defendant did not make a proper objection at trial to the Confrontation Clause violation, and therefore the issue was not preserved. In the alternative, the State argues that the error was harmless and is not reversible. We conclude that the question posed to Defendant violated the rule against hearsay evidence and that the error was not harmless. Therefore, we need not determine either the Confrontation Clause issue or whether the prosecutor engaged in misconduct.[3]

## A

{17} A hearsay statement consists of an out-of-court statement offered to prove the truth of the matter asserted. Rule 11–801(C) NMRA 2003. An out-of-court statement is inadmissible unless it is specifically excluded as non-hearsay under Rule 11–801(D) or falls within a recognized exception in the rules of evidence, *see, e.g.*, Rule 11–803 NMRA 2003, or is otherwise made admissible

by rule or statute. Rule 11–802. The purpose of the rule is to protect against the danger that a statement of. a declarant is unreliable because it is not given under oath by a witness who is present at trial and subject to cross-examination. 5 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 802.02[3], at 802–09 (Joseph M. McLaughlin ed., 2d ed.2002). We review the admission of evidence under an exception to the hearsay rule with deference to the trial court's discretion; we review to determine whether there has been an abuse of discretion. *State v. Torres*, 1998–NMSC–052, ¶ 15, 126 N.M. 477, 971 P.2d 1267.

{18} The statements made by Tucker and Goen to the police, which refer to a statement that Defendant allegedly made to them, were made out-of-court. The closer question is whether the statements were used to prove that Defendant had admitted to shooting a gun on the night of the murder. A statement is not considered hearsay if it is introduced merely to prove that the statement was in fact made. *See* Weinstein & Berger, *supra,* § 801.11[1], at 801–11. In this case, however, the statements may not have been used only to prove that Tucker and Goen in fact made statements to the police. The statements may have also been used to prove that Defendant made a statement in which he admitted shooting a gun.

{19} A potential multiple hearsay problem exists in the form of the question that the prosecutor asked Defendant. The primary statement is what Tucker and Goen apparently told the police. The included statement is what Defendant allegedly said. The included statement is not, in itself, hearsay if it was introduced only to prove that Defendant made the statement, not to prove that Defendant actually did shoot that night. *See State v. Ross*, 1996–NMSC–031, 122 N.M. 15, 20 n. 2, 919 P.2d 1080, 1085 n. 2 (noting the victim's statement that the defendant had threatened to kill the victim was offered to prove the defendant made the

---

3. In some cases, prosecutorial misconduct is so severe that a court may bar a retrial against a defendant. *State v. Breit*, 1996–NMSC–067, ¶ 32, 122 N.M. 655, 930 P.2d 792 (establishing a two-part test for determining when misconduct might rise to the level that a retrial should be barred). Defendant, however, has not argued that retrial should be barred, so we do not discuss this issue.

statement, not "to prove the truth of the matter asserted in [the] statement"). The State, however, presented the included statement to the jury through the primary statement. The primary statement that Tucker and Goen made to the police is the hearsay statement. In this context, in order for either statement to be admissible, both statements must be non-hearsay or within some exception to the rule. Rule 11–805 NMRA 2003. The primary statement is not admissible, and therefore, the included statement, as presented, is also inadmissible.

{20} Some out-of-court statements are not barred by the rule against hearsay or are not considered hearsay. We consider two non-hearsay theories of admissibility addressed in the parties' briefs: the prior inconsistent statement of a witness introduced to impeach the testimony of that witness, and the admission by a party opponent. We believe, however, that neither theory applies to the statements made in this case.

{21} The State argues that the statements were used to prove Defendant's prior inconsistent statements. A prior inconsistent statement made by a testifying witness may be introduced to impeach the in-court testimony of that same witness. *State v. Morales,* 2000–NMCA–046, ¶ 16, 129 N.M. 141, 2 P.3d 878; Rule 11–613. Such a statement does not qualify as hearsay because presumably it is not offered for the truth of the matter asserted, but only to call into question the credibility of the in-court testimony of the testifying witness. 2 Kenneth S. Broun, *McCormick on Evidence* § 249, at 103 (John W. Strong ed., 5th ed.1999); *State v. Olivas,* 1998–NMCA–024, ¶ 25, 124 N.M. 716, 954 P.2d 1193. In this case, however, the statements used to impeach Defendant's testimony were not his own prior inconsistent statements. The question referred to statements that Tucker and Goen made to the police, and what they told the police are their own statements, not Defendant's. The question was improper. Defendant did not have personal knowledge of whether Tucker and Goen made statements to the police. Therefore, he was asked to account for an event of which he did not have knowledge.

{22} A similar situation was confronted in *Bemis v. Edwards,* 45 F.3d 1369, 1372 (9th Cir.1995), where the Ninth Circuit Court of Appeals ruled that a statement made by a person other than the testifying witness may not be introduced to impeach the credibility of the testifying witness. The court noted that the rule allowing prior inconsistent statements of a witness for the purpose of impeachment "only applies to prior inconsistent statements of *testifying witnesses.*" *Id.* Furthermore, the court noted that an out-of-court statement made by a non-testifying witness used to impeach the testifying witness "presents an independent account of the events and thus does not serve solely to impeach the credibility of the [testifying witness]." *Id.*

{23} The State also argues that the statements to the police do not have to be admissible for the purpose of impeaching Defendant's testimony. Pursuant to Rule 11–613, an impeaching party does not have to present extrinsic evidence of a prior inconsistent statement in order to impeach a witness. 4 Weinstein & Berger, *supra,* § 613.05[1], at 613–15 ("Rule 613 does not require a party who seeks to impeach a witness through alleged prior inconsistent statements to present extrinsic evidence of the statements."). The State asserts, therefore, that the statements do not have to be admissible as evidence in order to be used for impeachment purposes and the prosecutor, as the impeaching party, only needs a good faith basis for confronting a witness with a prior inconsistent statement. *Id.* Defendant does not contend that the prosecutor did not have a good faith basis for relying upon the statements. However, this does not solve the problem that the statements introduced were not Defendant's statements.

{24} The prosecutor may have had a good faith basis to ask Defendant if he ever made such a statement to Tucker and Goen. That good faith basis could have been founded upon the interview the police had with them, but the statements they made to the police should not have been used on cross-examination in an effort to impeach Defendant. The cases cited by the State, which recognize that prior inconsistent statements

made by a witness may be introduced for impeachment purposes, are not dispositive. They do not address the question of whether the witness may be impeached by statements made by another to a third party. *See, e.g., Olivas,* 1998–NMCA–024, ¶¶ 24–26, 124 N.M. 716, 954 P.2d 1193 (discussing impeachment of a witness with statements that she made to the police).

{25} Even if the statements Tucker and Goen made to the police were introduced to impeach Defendant's in-court testimony, we believe the introduction of the statement that Defendant allegedly made to them served the substantive purpose of proving Defendant had admitted guilt. The statements made to the police were not used simply to challenge the credibility of a witness's testimony, but to prove that Defendant actually admitted to shooting a gun on that night. The question appears to assume a fact on which the jury could rely. That fact, however, was not properly in evidence. Similarly, in *State v. Lopez,* 1997–NMCA–075, 123 N.M. 599, 943 P.2d 1052, the Court of Appeals recognized that an out-of-court statement admitted into evidence for purposes of impeachment was also used for its truth at trial.

{26} In *Lopez,* the defendant was charged with DWI after police found him intoxicated by his truck at the site of an accident. *Id.* ¶ 3. The defendant denied driving his truck. *Id.* A witness testified in court that she did not see the defendant drive away from her house in his truck shortly before the accident. *Id.* ¶ 4. The trial court allowed the State to impeach that witness's testimony through the testimony of a police officer. *Id.* ¶ 6. The police officer testified that the witness previously told her that the witness saw the defendant drive away from her house immediately prior to the accident. *Id.* The trial court admitted the police officer's testimony as a statement of identification, under Rule 11–801(D)(1)(c). *Id.* ¶ 22. The Court of Appeals held that the admission of such a statement, however, went beyond the intent of the rule. "Instead," the Court explained,

this evidence went to prove essential elements of the crime charged that were very much in dispute. As utilized in this partic-

ular trial, the evidence was offered more in the nature of a prior inconsistent statement which, if not made under oath, may not be admitted as substantive evidence for the truth of its content.

*Id.; see* Rule 11–801(D)(1)(a) (permitting prior inconsistent statements to be introduced as substantive evidence if the statement was made at a previous trial, hearing or court proceeding, under oath and subject to the penalty of perjury). The Court of Appeals, therefore, held that the evidence was introduced for its truth and reversed the conviction.

■ {27} This case requires a similar analysis. The statements that were used by the State did not serve only to impeach; they offered an admission by Defendant on an issue that was highly disputed at trial. Pursuant to Rule 11–801(D)(2), the exclusion of hearsay statements does not apply to admissions made by party-opponents. An opposing party may introduce out-of-court statements made by its opponent under the theory that the declarant party is in court and has the opportunity to deny or explain such statements, 5 Weinstein & Berger, *supra,* § 801.30[1][a], at 801–44, but the admission must be the party's own out-of-court statement, not statements made by a third party. *See* Rule 11–801(D)(2)(a) (excluding admissions by a party-opponent from the hearsay rule). In this case the statements offered by the State are not Defendant's own statements.

{28} Defendant contends that we should not condone the introduction of otherwise inadmissible evidence brought before the jury through impeachment on cross-examination. *See State v. Carter,* 21 N.M. 166, 172, 153 P. 271, 272 (1915); *United States v. Sanchez,* 176 F.3d 1214, 1222 (9th Cir.1999); *United States v. Hall,* 989 F.2d 711, 716 (4th Cir.1993). Of these three cases, *Sanchez* is the most analogous to this appeal. In *Sanchez,* the prosecutor impeached the defendant with statements that the defendant's wife gave to federal marshals. *Sanchez,* 176 F.3d at 1221. After the defendant denied having been to Bozeman, Montana, the prosecutor asked him "[d]o you know why [your wife] would have told the marshal's service

that you ... went to Bozeman ...?" *Id.* The court already had determined that the defendant's wife could not testify at trial because of the marital privilege. *Id.* at 1222. The court found that the prosecutor engaged in misconduct by introducing inadmissible statements before the jury under the guise of "artful cross-examination." *Id.* (internal quotation marks omitted). Therefore, the court concluded that the statement should not have been used to impeach the defendant. Although we do not determine the issue of prosecutorial misconduct, *Sanchez* provides further support for our conclusion on other grounds that the trial court erred in permitting the cross-examination.

■ {29} Our conclusion does not imply that in this case the State had no permissible way to impeach Defendant regarding the alleged statement he made to Tucker and Goen. A proper way to conduct the impeachment would have been for the State to ask Defendant if he told them that he shot a gun that night. After Defendant denied making such a statement, then the State could have called them to testify. If either his sister or his roommate had testified that he admitted shooting a gun, the jury would have had admissible evidence of the statement to which the prosecutor referred during cross-examination. *See* Rule 11–801(D)(2)(a). Further, if either had testified and denied that Defendant made the statement, the State could have impeached the witness with any prior inconsistent statements made to the police. *See* Rule 11–613.

{30} The State concedes that Tucker and Goen were available to testify, but asserts that Defendant could have called them as witnesses in order to cross-examine them regarding their alleged statements made to the police. It was not Defendant's burden to produce the hearsay declarants as witnesses. It was the State's obligation to offer the statements. Defense counsel argued, "[the State] is attempting to impeach [Defendant] with extrinsic evidence of which I have no opportunity to cross-examine him with, under what circumstances or anything else." The

State responded by asserting that Defendant's sister had been available to the defense and further that she would not cooperate with the State. This response should have alerted the trial court to the likelihood the State did not intend to call Tucker and Goen in order to introduce Defendant's statement as an admission.[4] Allowing the State to proceed was error.

**B**

■ {31} The State argues that even if this Court holds that the trial court erred in allowing the cross-examination at issue the error, nevertheless, was harmless and does not require reversal and a new trial. The State argues that, because Coriz testified that he heard Defendant tell his sister, "we went and shot at some people," the prosecutor's reference to Defendant's alleged admission on cross-examination should be viewed as cumulative evidence. "The erroneous admission of cumulative evidence is harmless error because it does not prejudice the defendant." *State v. Woodward,* 121 N.M. 1, 10, 908 P.2d 231, 240 (1995).

■ {32} Under the facts of the present case, we cannot conclude that the reference to Defendant's alleged admission was harmless.

> For an error by the trial court to be considered as harmless, there must be: (1) substantial evidence to support the conviction without reference to the improperly admitted evidence, (2) such a disproportionate volume of permissible evidence that, in comparison, the amount of improper evidence will appear so min[u]scule that it could not have contributed to the conviction, and (3) no substantial conflicting evidence to discredit the State's testimony.

*State v. Moore,* 94 N.M. 503, 504, 612 P.2d 1314, 1315 (1980). We hold the error requires a new trial.

{33} The reference to statements made by Defendant that he admitted to shooting a gun at the scene of the murder most likely had a substantial effect upon the jury. The

---

4. The prosecutor must have believed that the statement was properly before the jury under

Rule 11–613(B). As explained above, it was not.

State did not present other overwhelming evidence of Defendant's guilt. In fact, the State relied heavily upon Coriz' eyewitness testimony. His testimony was directly contradicted by Defendant's own testimony. The introduction of Defendant's alleged admission of guilt, which corresponded to Coriz's account of the events that night, would have been a significant factor supporting Coriz's credibility. Defendant had no chance to prove that he never made the statements to which the prosecutor referred during cross-examination. Without such an opportunity, the jury was left to assume that Defendant actually admitted that he shot a gun that night.

{34} The State argues that the errors were less harmful because it did not call Tucker and Goen as witnesses and reasons that the jury would have given the information conveyed by the question less weight. Whether the information was less persuasive than it could have been is not the standard we must apply. We do not believe that there was such a disproportionate volume of permissible evidence that the improper cross examination was so minuscule that it could not have contributed to Defendant's conviction. Under *Moore,* then the error was not harmless.

### III

{35} We hold that the trial court abused its discretion in permitting the prosecutor to refer to the statements that Tucker and Goen allegedly made to the police. The reference to these statements violated the hearsay rule. The reference was not harmless. Therefore, we reverse the convictions, and remand for a new trial consistent with this opinion.

{36} **IT IS SO ORDERED.**

MAES, C.J., SERNA and BOSSON, JJ., concur.