This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                              **No. 31,414**

**ROBERT RIVERA,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Reed S. Sheppard, District Judge**

Gary K. King, Attorney General
Santa Fe, NM

for Appellee

Jacqueline Cooper, Chief Public Defender
Nina Lalevic, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**BUSTAMANTE, Judge.**

Robert Rivera (Defendant) appeals from the judgment, sentence and commitment, convicting him, after a jury trial, of aggravated battery (great bodily harm) (firearm enhancement) and resisting, evading, or obstructing an officer. [RP 233] Defendant raises four issues on appeal. [DS 7-11] The calendar notice proposed summary affirmance. [Ct. App. File, CN1] Defendant has filed a memorandum in opposition, pursuant to *State v. Franklin*, 78 N.M. 127, 129, 428 P.2d 982, 984 (1967) and *State v. Boyer,* 103 N.M. 655, 658-60, 712 P.2d 1, 4-6 (Ct. App. 1985), that we have duly considered. [Ct. App. File, MIO] Unpersuaded, however, we affirm Defendant's convictions.

**Issue 1 - Hearsay Testimony regarding Identification of Defendant as the Shooter.**

We review the admission of evidence pursuant to an exception or an exclusion to the hearsay rule under an abuse of discretion standard. *State v. McClaugherty*, 2003-NMSC-006, ¶ 17, 133 N.M. 459, 64 P.3d 486.

In the memorandum, Defendant continues to argue that the district court erred by permitting Ms. Bribiesca to, in essence, vouch for Mr. Puentes' identification, because Ms. Bribiesca testified that Mr. Puentes told her Defendant shot him but in reality, Mr. Puentes identified Defendant later, through a line-up. [MIO 5] We continue to disagree.

The State asked Ms. Bribiesca, the victim's girlfriend, who Mr. Puentes, the victim, told her had shot him. [DS 7] Defense counsel objected on hearsay grounds, and the parties approached for a bench conference. [Id.] The State argued that under Rule 11-801(D)(1)(c) NMRA, the statement was not hearsay because it was one of identification made after perceiving the person. [Id.]

Rule 11-801(D)(1)(c) NMRA, provides that

D. **Statements which are not hearsay**. A statement is not hearsay if:

(1)    **Prior statement by witness**. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is
. . . (c)  one of identification of a person made after perceiving the person; . . .

At trial, both Ms. Bribiesca and the investigating officer on the scene, Officer Enyart, testified that, at the scene, the victim said he saw and recognized his shooter but did not know the shooter's name.   [DS 6, 8]  There was also testimony at trial that, pursuant to a line-up, Mr. Puentes later identified Defendant as the person who shot him, and Mr. Schuetz, the security guard of the bar where the events took place, identified Defendant as the person he saw running with a firearm. [DS 6] The alleged hearsay statement was made by the victim, Mr. Puentes, who is the declarant, and he testified at trial and was subject to cross-examination.   The statement is one of identification of a person made by Puentes, immediately after perceiving the person.

3

Rule 11-801(D)(1)(c) provides that such a statement is not hearsay. We hold that the district court did not abuse its discretion in allowing Ms. Bribiesca's testimony.

To the extent Defendant argues that because the declarant, Mr. Puentes, was available, Ms. Bribiesca should not have the opportunity to relay identification testimony, or that the prior statement should have been under oath [DS 7], Defendant does not cite any authority to support these assertions, and we know of none. In fact, Rule 11-801(D)(1)(c) appears to directly apply to the very situation that arose at trial in this case, as recognized by the United States Supreme Court case law cited by Defendant in the docketing statement. [DS 12] If only the declarant, Mr. Puentes, could testify as to what he said at trial, there would not even be a hearsay/nonhearsay issue. *See, e.g., State v. Haynes*, 2000-NMCA-060, ¶ 14, 129 N.M. 304, 6 P.3d 1026 ("Defendant acknowledges that a witness may testify about a prior out-of-court identification of a defendant and that such testimony is not hearsay if the declarant testifies at trial and is subject to cross-examination on the out-of-court identification."). *See* Rule 11-801(D)(1)(c). We affirm the district court on this issue.

**Issue 2 - The Jurors' Diagram.**

In the memorandum, Defendant argues that even if defense counsel did not bring the error to the attention of the district court, the jury's reliance on the diagram

during deliberations rendered Defendant's trial fundamentally unfair. [MIO 7] We disagree.

As we discussed in the calendar notice, even if Defendant did not preserve the error below, Defendant was not denied a fair and just trial due to a juror improperly introducing extraneous prejudicial information. *See, e.g., State v. Mann*, 2002-NMSC-001, ¶ 27, 131 N.M. 459, 39 P.3d 124 (emphasizing that "the underlying issue in cases involving extraneous information is a defendant's right to a fair and impartial jury"). During closing argument, counsel used a demonstrative hand-drawn sketch of the location of the incident and spoke about the perspectives and vantage points of the witnesses. [DS 8] When counsel went into the jury room to talk with the jurors about how they reached their verdict, they talked about how a juror, who is a physicist, had drawn his own version of the scene and the location on a large hanging pad so that the group could use it during their deliberations. [Id.] The jurors admitted that ideas about the case that they came up with using the sketch, allowed them to make their decision. [Id.]

Rule 11-606(B) NMRA provides that:

> a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith. But a juror may testify about (1) whether extraneous prejudicial information was improperly brought

to the jury's attention, (2) whether any outside influence was improperly brought to bear upon any juror, or (3) whether there was a mistake in entering the verdict onto the verdict form.

"Thus, a juror may testify on the very limited circumstance of whether extraneous prejudicial information was improperly before the jury. Otherwise, the rule prohibits a juror from testifying as to any matter or statement made during the course of deliberations or to the juror's mental processes." *Mann*, 2002-NMSC-001, ¶ 18. In *Mann*, because a juror's calculations and articulations were based on the evidence presented in court and on the defendant's expert's testimony, our Supreme Court rejected the defendant's contentions that new evidentiary facts which contradicted defense testimony had been improperly presented by a juror, who had attempted to calculate the finite probability of impaling oneself on a screwdriver. *Id.* ¶¶ 28, 33. In addition, our Supreme Court discussed the "difficulties inherent in attempting to distinguish extraneous information from permissible deliberation based on life experience[,]" the "importance of allowing our jury system to function without improper interference," and the "critical need for this Court to protect open, full, and complete deliberations among members of the jury." *Id.* ¶ 33.

In this case, the juror did no more than what counsel had done in trial at closing argument. In addition, although the juror who drew the sketch is a physicist, he did not introduce any new evidence for the jury to consider. The sketch simply showed

6

how the jurors organized, summarized, and interpreted the trial evidence with regard to the parties' locations and vantage points at the time of the shooting. If our Supreme Court did not consider the jurors' calculations in *Mann*, which included a specialized knowledge of mathematics and probability (but no more specialized or different from the defendant's expert's trial testimony) to be "extraneous prejudicial information," then certainly a sketch of the type used here cannot be so considered.

Nor can we say that fundamental error occurred due to the jurors' use of the diagram. "A fundamental error occurs where there has been a miscarriage of justice, the conviction shocks the conscience, or substantial justice has been denied." *State v. Cabezuela*, 2011-NMSC-041, ¶ 49, 150 N.M. 654, 265 P.3d 705 (internal quotation marks and citation omitted). Moreover, "'[t]he first step in reviewing for fundamental error is to determine whether an error occurred. If that question is answered *affirmatively*, we then consider whether the error was fundamental.'" *Id.* (quoting *State v. Silva*, 2008-NMSC-051, ¶ 11, 144 N.M. 815, 192 P.3d 1192 (emphasis added)). As discussed in this opinion, substantial evidence supports Defendant's convictions, and Defendant's other issues do *not* demonstrate error. We cannot say that fundamental error has occurred in this case or that Defendant was denied a fair trial.

We affirm the district court on this issue.

**Issue 3 - Instructing the Jury to Deliberate Further after all the other Verdict Forms had been Read Aloud and Defendant had been Handcuffed.**

In the memorandum, Defendant continues to argue that the district court judge gave the jury an impermissible shotgun instruction on the alternate count. [MIO 7-8] We remain unpersuaded.

When the jurors came out of deliberations, they handed the packet of verdict forms to the district court judge. [DS 9] The judge looked through the forms, setting some to the side. [Id.] Defense counsel and Defendant stood and the judge read the verdict. [DS 10] The judge stated that Defendant was found guilty of the alternative to Count 1, aggravated battery (great bodily harm) (firearm enhancement), at which point the correctional officers, in accordance with Bernalillo County Detention policies, handcuffed Defendant. [Id.] The judge also stated that Defendant was found guilty of resisting, evading, or obstructing an officer. [Id.] When the judge was about to thank the jurors and dismiss them, defense counsel apparently stated that the jury had not come to a decision on the other alternative first count – aggravated battery (deadly weapon) (firearm enhancement). [Id.] The district court then gathered the verdict forms and sent the jury back to deliberate further. [Id.] When the jury indicated that they had determined that aggravated battery (great bodily harm) (firearm enhancement) was the most appropriate charge, the judge indicated that they needed to come to some sort of decision on aggravated battery (deadly weapon). [Id.]

Defendant still sat handcuffed. [Id.] The jury found Defendant guilty of aggravated battery (great bodily harm) (firearm enhancement). [RP 227-28, 234] Defendant moved for a mistrial, which the district court denied. [DS 9]

We will not overturn a trial court's denial of a motion for a new trial unless the trial court abused its discretion. *See State v. Volpato*, 102 N.M. 383, 385, 696 P.2d 471, 473 (1985). Here, even after the jury was sent back to deliberate, they clearly indicated that they had all agreed that aggravated battery (great bodily harm) (firearm enhancement) was the most appropriate verdict. Thus, there is no breaking of jury deadlock at stake or shotgun instruction at issue. *See e.g., State v. Laney*, 2003-NMCA-144, ¶¶ 49, 51, 134 N.M. 648, 81 P.3d 591 (discussing and rejecting the defendant's arguments that sending the jury back to deliberate, despite ten jurors' belief that they were hopelessly deadlocked, amounted to a "shotgun" instruction, where the district court asked if the jurors could further deliberate and they expressed their willingness to do so).

The misunderstanding or confusion in this case appears to have been that the jury did not realize that in convicting Defendant of one alternative of Count 1 (aggravated battery (great bodily harm) (firearm enhancement)), they needed to reject the other alternative (aggravated battery) (deadly weapon)). The final verdict forms correctly and clearly set forth the jury's unanimous intentions with regard to the jury's

convictions. [RP 227-29] Thus, there were no inappropriate communications by the district court judge to the jurors that would warrant a new trial. Therefore, we cannot say that the district court abused its discretion in denying a mistrial.

We affirm the district court on this issue.

**Issue 4 - Sufficiency of the Evidence.**

In the memorandum, Defendant continues to argue that there was insufficient evidence to support his convictions due to numerous factual inadequacies and inconsistencies. [MIO 8] We are not persuaded, however, that Defendant's convictions should be vacated on this basis.

"In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176; *see also State v. Salas*, 1999-NMCA-099, ¶ 13, 127 N.M. 686, 986 P.2d 482 (recognizing that it is for the fact-finder [in this case, the judge] to resolve any conflict in the testimony of the witnesses and to determine where the weight and credibility lay).

As we discussed in the calendar notice, the jury was properly instructed on the elements of the crimes [RP 203, 206], and the State presented substantial evidence to support Defendant's convictions. [CN1 9-11] The fact that the jury resolved the

factual inadequacies and inconsistencies against Defendant, is not a basis to vacate his convictions. *See State v. Mora*, 1997-NMSC-060, ¶ 27, 124 N.M. 346, 950 P.2d 789 ("The reviewing court does not weigh the evidence or substitute its judgment for that of the fact finder as long as there is sufficient evidence to support the verdict."); *see also State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829 ("Contrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject Defendant's version of the facts."). We hold that the State presented substantial evidence to support Defendant's convictions for aggravated battery (great bodily harm) (firearm enhancement), and resisting, evading, or obstructing an officer. [RP 227-29]

For the reasons set forth in the calendar notice and this opinion, we affirm Defendant's convictions. [RP 233]

**IT IS SO ORDERED.**

_____

**MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**

_____

**CELIA FOY CASTILLO, Chief Judge**

11

_____

**JONATHAN B. SUTIN, Judge**