This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO**

Plaintiff-Appellee,

v.                                                              **NO. 30,230**

**VALENTE HERNANDEZ,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**Sandra A. Grisham, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Jaqueline R. Medina, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Acting Chief Public Defender
Carlos Ruiz de la Torre, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**GARCIA, Judge.**

**{1}** Defendant appeals from his jury conviction for two counts of criminal sexual penetration. On appeal, Defendant argues that the district court erred in: (1) denying his motion to suppress his pre-arrest statement to the police; (2) denying his motion to present evidence of his prior sexual relationship with Victim; (3) excluding hearsay testimony from a defense witness to impeach Victim's trial testimony; (4) excluding a copy of Victim's "Myspace" page; and (5) denying his motion to merge his convictions. Defendant further challenges the sufficiency of the evidence to sustain his convictions. We affirm.

**BACKGROUND**

**{2}** On December 1, 2008, Victim lost consciousness after consuming a large amount of alcohol. When Victim awoke, Defendant had already penetrated her vaginally and was in the process of penetrating her anally. Victim testified that she was unable to protest or prevent the penetration. Defendant admits to having sex with Victim, but argued throughout the course of trial that Victim consented to the sexual activity. Following trial, a jury convicted Defendant of two counts of criminal sexual penetration in the third degree in violation of NMSA 1978, Section 30-9-11(F) (2007) (amended 2009). Defendant timely appealed his convictions to this Court.

**DISCUSSION**

**I.     Motion to Suppress**

**{3}** After speaking with Victim, Detective Collins went to Defendant's home and

2

requested an interview with Defendant. Defendant voluntarily agreed to meet Detective Collins at the police station for the interview. Detective Collins did not advise Defendant of his *Miranda* rights prior to the interview. During the interview, Defendant admitted to having sex with Victim, explaining that they had vaginal sex and that his penis slipped and accidentally entered Victim's anus. Immediately after the interview, Detective Collins arrested Defendant for two counts of criminal sexual penetration in the third degree in violation of Section 30-9-11(F).

{4}     Before trial, Defendant sought to exclude the pre-trial statements he made during his interview with Detective Collins. Defendant filed a motion to suppress, arguing that he was in de facto custody at the time of the interview and had not been read his *Miranda* rights. At a hearing on Defendant's motion to suppress, Detective Collins explained that he was not convinced of the direction of the case before he conducted the interview. He stated that if Defendant's statements had not corresponded with the other witnesses' versions of the events, he would not have arrested Defendant until he had conducted further investigation. The district court denied the motion, finding that Detective Collins did not make the decision to arrest until after the interview and that Defendant was not in custody for purposes of *Miranda* at the time of his confession. A DVD of the interview was then played for the jury.

{5}     On appeal, Defendant argues that the district court erred in denying his motion

3

to suppress his pre-arrest statement to police. Defendant contends that he was in custody for the purposes of *Miranda* and that law enforcement should have advised him of his rights against self-incrimination before questioning him.

**A.    Standard of Review**

{6}    A ruling on a motion to suppress evidence presents a mixed question of law and fact. *State v. Garcia*, 2005-NMSC-017, ¶ 27, 138 N.M. 1, 116 P.3d 72. In reviewing a district court's ruling on a motion to suppress, "[we] review[ ] factual findings under a substantial evidence standard, viewing the facts in the light most favorable to the prevailing party, and [the appellate courts] review de novo whether the district court correctly applied the law to the facts." *State v. Slayton*, 2009-NMSC-054, ¶ 11, 147 N.M. 340, 223 P.3d 337. In addition, we "indulge in all reasonable inferences in support of the district court's ruling and disregard all evidence and inferences to the contrary." *State v. Bravo*, 2006-NMCA-019, ¶ 5, 139 N.M. 93, 128 P.3d 1070. Whether a defendant was subject to a custodial interrogation is a legal determination that the appellate courts review de novo on appeal. *State v. Nieto*, 2000-NMSC-031, ¶ 19, 129 N.M. 688, 12 P.3d 442.

**B.    Admissibility of Defendant's Statement**

{7}    *Miranda* warnings are required to protect a suspect's Fifth Amendment rights against self-incrimination when an individual is "subjected to the inherently compelling pressures of custodial police interrogations." *State v. Olivas*, 2011-

4

NMCA-030, ¶ 10, 149 N.M. 498, 252 P.3d 722.  An officer's obligation to administer *Miranda* warnings arises only when a person is "(1) interrogated while (2) in custody."  *Olivas*, 2011-NMCA-030, ¶ 10 (internal quotation marks and citation omitted).  Here, it is uncontested that Detective Collins asked Defendant questions that he knew were likely to elicit incriminating responses.  The State concedes that this questioning satisfied the interrogation requirement.  Therefore, the sole issue we consider is whether Defendant was in custody when questioned.

{8}    Defendant asserts that he was in custody at the time of Detective Collins' questioning because he was "separated from his brother at the police station, brought into a secured area, questioned extensively[,] and never told that he was not obligated to answer [Detective Collins'] questions."  Whether a defendant was in custody at the time of questioning requires "a fact-specific analysis of the totality of the circumstances under which the questioning took place."  *Id.*  "*Miranda* applies when a suspect's freedom of movement is restrained to a degree associated with a formal arrest."  *State v. Munoz*, 1998-NMSC-048, ¶ 40, 126 N.M. 535, 972 P.2d 847 (internal quotation marks and citation omitted).  Thus, a suspect is in custody if a reasonable person would believe that he or she is not free to leave the interview.  *Id.* (providing the following factors to guide our inquiry:  "the purpose, place, and length of interrogation[,] the extent to which the defendant is confronted with evidence of guilt, the physical surroundings of the interrogation, the duration of the detention, and the

5

degree of pressure applied to the defendant" (internal quotation marks and citations omitted)).

{9} On the record before us, we find little conflicting evidence to support the notion that Defendant was subjected to a custodial interrogation. Defendant voluntarily agreed to meet Detective Collins at the police station. Defendant's brother drove him to the police station and Defendant waited in the lobby until Detective Collins arrived. Detective Collins then escorted Defendant to an interview room, offered him a beverage, and informed Defendant that he was closing the door for privacy. Defendant was not handcuffed and the door to the interview room, although closed, was not locked. Defendant never informed officers that he wanted to leave or that he did not want to give a statement. On the contrary, Defendant gave a voluntary statement and was forthcoming with information. During the approximately forty-five minute interview, Defendant was neither advised that he was under arrest nor told he could not leave. After the interview was completed, the decision was made to arrest and charge Defendant.

{10} We conclude that the questioning in this case was initiated in a context where Defendant's freedom to depart was not restricted in any way until after the interview was completed. *See Nieto*, 2000-NMSC-031, ¶ 21 (holding that a suspect was not in custody where the suspect was "asked and agreed to accompany [the] police officers to the station, was free to leave or terminate the interview, and was provided

6

transportation to and from the station" because these facts "are consistent with routine, non-custodial police questioning"); *Munoz*, 1998-NMSC-048, ¶ 43 (holding that a suspect was not in custody where the suspect willingly went with police to be questioned, was not handcuffed or searched, was not interviewed in a locked space, and was taken back home when the interview was completed); *Bravo*, 2006-NMCA-019, ¶¶ 12-13 (holding that the defendant was not in custody where she was asked to give a statement, voluntarily went to the police station to do so, followed the police to the station in her own personal vehicle and accompanied by her husband, never informed officers that she was tired, and was never placed in handcuffs or told she was under arrest).

{11}     We recognize that Defendant in this case was identified as a suspect prior to questioning and was arrested immediately following the conclusion of questioning. *See Munoz*, 1998-NMSC-048, ¶ 42 ("It is also true that [the d]efendant had become the focus of the police investigation, but this factor alone is not enough to trigger the need to give warnings."); *Bravo*, 2006-NMCA-019, ¶ 13 (considering as relevant the fact that the defendant was not arrested immediately after her confession). But Detective Collins explained that he considered Defendant's statement vital to his investigation. Although Defendant was identified as a suspect, Detective Collins was unclear the direction the case would take in the absence of a statement from Defendant. Neither evidence nor argument was offered by Defendant to assert that,

7

at some point during the actual questioning, his interrogation converted from a non-custodial encounter to a custodial interrogation. Detective Collins felt he had probable cause to arrest Defendant after questioning him because Defendant's version of the events were generally consistent with those of the other witnesses. If Defendant's statements had differed, Detective Collins explained that he probably would have continued his investigation until he felt he had more facts. As such, we disagree with Defendant's argument that Detective Collins "already had probable cause for an arrest, yet he did not read [Defendant] his rights prior to the interrogation at the police station." We conclude that Detective Collins did not make the decision to arrest Defendant until after Defendant's questioning was over.

{12}     Based on our analysis, we hold that Defendant was not subjected to a custodial interrogation by Detective Collins. Because Defendant was not subjected to a custodial interrogation at the time his voluntary statements were made, a warning under *Miranda* was unnecessary. Defendant's pre-arrest statements were admissible and we affirm the district court's denial of Defendant's motion to suppress.

## II.     Evidentiary rulings

{13}     Defendant appeals several of the district court's evidentiary rulings. The appellate courts "review the admission of evidence under an abuse of discretion standard and will not reverse in the absence of a clear abuse." *State v. Sarracino*,

1998-NMSC-022, ¶ 20, 125 N.M. 511, 964 P.2d 72. The appellate court "cannot say the [district] court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citation omitted).

**A.      Victim's Prior Sexual Relationship With Defendant**

**{14}**      We first address Defendant's argument that the district court erred in denying his Rule 11-413 NMRA (2010) (codified as renumbered Rule 11-412 NMRA (2012)) motion to present evidence of his prior sexual activity with Victim. The district court ruled that the requested prior sexual conduct evidence was not relevant and inadmissible. Defendant contends that the proposed evidence that Victim and Defendant had engaged in consensual sexual encounters on at least two prior occasions was relevant to establish the context of his relationship with Victim and to support his mistake of fact defense.

**{15}**      The district court denied Defendant's motion after conducting an in camera hearing. The court explained that it had not heard substantial evidence supporting a clear showing that the prior sexual act closely resembled the present act. It noted that the State's theory was Victim was incapable of giving consent because she was passed out and inquired as to how Defendant's claim regarding prior consent was relevant to the issue of whether Victim was too drunk to consent on this occasion. Defense counsel replied that Victim and Defendant were drinking and having sex on both

9

occasions. In response, the district court explained that it had not heard anything about prior rough sex, anal sex, or that Victim had been drunk and passed out during the prior sexual encounter.

{16}   NMSA 1978, Section 30-9-16(A) (1993) precludes evidence of a rape victim's past sexual conduct, unless "the evidence is material to the case and . . . its inflammatory or prejudicial nature does not outweigh its probative value." Rule 11-413(A) (2010) during the applicable time was consistent with this statutory counterpart. We consider whether the district court should have reasonably excluded the evidence after considering a five-factor test: (1) whether there is a clear showing that the complainant committed the prior acts; (2) whether the circumstances of the prior acts closely resemble those of the pertinent case; (3) whether the prior acts are clearly relevant to a material issue, such as identity, intent, or bias; (4) whether the evidence is necessary to the defendant's case; and (5) whether the probative value of the evidence outweighs its prejudicial effect. *See State v. Johnson*, 1997-NMSC-036, ¶ 27, 123 N.M. 640, 944 P.2d 869. The State argues that the *Johnson* framework supports the district court's ruling.

{17}   Defendant was required to demonstrate that Victim's prior sexual conduct is both material and that its prejudicial effect does not outweigh its probative value in order to admit such evidence. *Id.* ¶ 41. Defendant argued to the district court that the evidence was relevant to show his knowledge that Victim enjoyed rough sex, and that,

10

because of this knowledge, Defendant "may have been under the mistaken impression that [Victim] did not object to his actions on the night in question." But the fact that Victim may have engaged in sexual activity with Defendant on a prior occasion does not show that she had a propensity to do so again. *Id.* ¶ 40 (noting that rape shield laws were designed to restrict attempts to show a victim had consented on this occasion because she had consented on other occasions). This is especially true given that the State alleged Victim was unconscious during most of the sexual activity, and Defendant failed to present any argument that the previous sexual activity involved similar circumstances related to the capacity of Victim that might be considered to be permissive. There must be additional evidence connecting the type of consent involved during prior acts to the consent alleged in the subsequent act before the prior acts become materially relevant.

{18} In this case, Defendant was charged with raping Victim while she "suffered from a condition which made her incapable of giving consent[.]" If the State can establish that Victim suffered from a condition that made her incapable of giving consent at the time of sexual intercourse with Defendant, then testimony offered to support a consent defense would be irrelevant because Victim was incapable of consent. For the same reasons, a mistaken belief in the existence of such consent when Victim was incapacitated and passed-out would also be irrelevant. This is especially true in light of Defendant's theory that Victim voluntarily consented to the

11

sexual encounter. Defendant failed to show the necessary relevance of Victim's prior sexual conduct at any time during the trial process or in his argument on appeal. Based on the record before us, we conclude that Defendant failed to make the requisite showing of relevancy to the district court. When balancing the probative value of minimally relevant evidence against the prejudicial effect of Victim's prior sexual conduct, Defendant's showing was marginal at best. As such, the district court did not abuse its discretion in holding that the evidence proffered by Defendant was irrelevant and inadmissible. *See State v. Stephen F.*, 2008-NMSC-037, ¶ 8, 144 N.M. 360, 188 P.3d 84 (recognizing that a district court's decision about a victim's prior sexual conduct is reviewed for an abuse of discretion standard).

**B.      Victim's Hearsay Statements**

{19}      We now address Defendant's argument that the district court erred in excluding hearsay testimony attributed to Victim by her former co-worker (Mula). Defendant sought to impeach Victim's testimony with testimony from Mula that on the day after the events that led to the charges in this case, Victim told Mula that "the problem was that [Defendant] put it in the wrong place while they were having sex."

{20}      The Rules of Evidence permit a party to impeach the credibility of a witness with evidence that the witness made a prior statement that is inconsistent with the witness's trial testimony. Rule 11-613 NMRA; *cf. State v. Gutierrez*, 1998-NMCA-172, ¶¶ 8, 10, 126 N.M. 366, 969 P.2d 970 (holding that prior

inconsistent statements not under oath are only admissible to impeach a witness and are not admissible as substantive evidence to convict), *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37 n.6, 275 P.3d 110. "To accomplish impeachment by prior inconsistent statements, the attorney must first elicit in-court testimony about a matter." *State v. Macias*, 2009-NMSC-028, ¶ 20, 146 N.M. 378, 210 P.3d 804, *overruled on other grounds by Tollardo*, 2012-NMSC-008, ¶ 37 n.6. The attorney can then confront the witness with the prior statement only if it is inconsistent with the witness's trial testimony. *Id.* "The attorney must [also] provide the witness with an opportunity to explain and the opposite party an opportunity to examine on the statement, although not necessarily with any specification of any particular time or sequence of the statement." *Id.* (internal quotation marks and citation omitted); Rule 11-613(B) (making admission of extrinsic evidence of prior inconsistent statements contingent upon the witness having an opportunity to explain the statements).

**{21}** In the present case, Victim's prior statement was not used for impeachment purposes. *See Macias*, 2009-NMSC-028, ¶ 20 ("When impeaching with prior inconsistent statements not made under oath, it is the fact of the inconsistency that is admissible, not the substantive truth or falsity of the prior statement."). During cross-examination of Victim, defense counsel asked Victim if she recalled telling Mula that she and Defendant started having sex and Defendant put it in a place that she did not

like. Victim responded, "I don't recall saying that." It is not clear whether Victim disputed what she may have said to Mula or simply was unable to answer the question due to a lack of memory. The matter was not clarified by further cross-examination of Victim. Based upon this testimony, Defendant could not impeach Victim with any prior inconsistent statement to Mula because Victim's answer was not a statement of fact that could be impeached. *See id.* ¶ 21 ("[W]here the witness does not testify contrary to his prior statement but demonstrates an absence of memory, such prior statement must be used sparingly to demonstrate lack of integrity in the witness or the reason for surprise to the party which calls him, but these legitimate purposes may not be used as a ruse for introducing inadmissible evidence." (internal quotation marks and citation omitted)). Mula's proffered testimony was offered as a defense to factually establish an admission of consent by Victim rather than to impeach her prior testimony as inconsistent. *See State v. McClaugherty*, 2003-NMSC-006, ¶¶ 28-30, 133 N.M. 459, 64 P.3d 486 (finding error where "the [state] engaged in misconduct by introducing inadmissible statements before the jury under the guise of 'artful cross-examination'" rather than proceeding with the proper way to conduct the impeachment of a defendant and other lay witnesses), *overruled on other grounds by Tollardo*, 2012-NMSC-008, ¶ 37 n.6.

**{22}** We are convinced that Defendant was seeking to use Mula's testimony for the truth of the matter asserted rather than to impeach Victim's credibility. *See State v.*

14

*Lopez*, 2011-NMSC-035, ¶ 16, 150 N.M. 179, 258 P.3d 458 ("Only if the primary purpose of the proffered testimony is to provide evidence, and *not* as a back-door attempt to introduce otherwise inadmissible hearsay under the auspices of impeachment, should a court permit that evidence to be presented to the jury."). Nonetheless, even if Defendant did have a proper primary purpose in seeking to admit Victim's hearsay statement to impeach Victim's credibility, there was no inconsistency between Victim's answer to defense counsel's question and the prior statement allegedly made to Mula. *See Macias*, 2009-NMSC-028, ¶¶ 20-21. Based upon the manner of questioning and the attempt to use Mula's testimony for impeachment, we hold that it was not an abuse of discretion for the district court to exclude Mula's testimony as inadmissible hearsay under Rule 11-613. *See State v. Olivas*, 1998-NMCA-024, ¶ 23, 124 N.M. 716, 954 P.2d 1193.

**C. Victim's Myspace Page**

**{23}** Defendant argues the district court erred in prohibiting the admission of a copy of Victim's Myspace page into evidence. Defendant contends that Victim's statement on the page, "You better believe me, I really ain't the one to **** with, and if you don't believe me...ask the people on my friend list[,]" showed a motive to fabricate and a pattern of vindictive behavior. The district court concluded that Victim's Myspace page was inadmissible evidence because it was irrelevant, more prejudicial than probative, and improper character evidence. The district court also noted that the

15

statement took place in November 2009, almost a year after the incident.

**{24}** On appeal, Defendant has failed to put forward sufficient facts for us to consider the merit of this argument. *See State v. Aragon*, 1999-NMCA-060, ¶ 10, 127 N.M. 393, 981 P.2d 1211 (illustrating that it is the appellant's burden to clearly demonstrate error on appeal). Defendant merely argues that Victim's Myspace page "was highly probative and should have been admitted because it showed that [Victim] is vindictive and is capable of accusing someone if she perceives herself to be crossed or disrespected, which was exactly the defense's contention" concerning Victim's accusation against Defendant. Defendant has not provided this Court with any relevant assertion of authority that was provided to the district court to support his contention. In addition, Defendant has not provided this Court with any authority, record citations, or argument which demonstrates that the district court abused its discretion in excluding Victim's Myspace page from evidence. *See State v. Clifford*, 117 N.M. 508, 513, 873 P.2d 254, 259 (1994) ("When a criminal conviction is being challenged, counsel should properly present [the appellate courts] with the issues, arguments, and proper authority. Mere reference in a conclusory statement will not suffice[.]"). Given the vagueness of the statement at issue and the fact that it was made almost a year after the incident, we decline to second-guess the discretion and judgment of the district court. *See State v. Buchanan,* 76 N.M. 141, 144, 412 P.2d 565, 567 (1966) (noting that the admission or rejection of impeachment testimony

16

regarding witness credibility is largely in discretion of the trial court). We therefore hold that the district court properly acted within its discretion.

**III.    Double Jeopardy**

**{25}**    Defendant argues that his two convictions for criminal sexual penetration (CSP), via vaginal and anal penetration, violate federal double jeopardy provisions. Accordingly, Defendant asserts that it was error for the district court to deny his motion at sentencing to merge the two convictions.

**{26}**    We review the constitutional question of whether there has been a double jeopardy violation de novo. *State v. Andazola*, 2003-NMCA-146, ¶ 14, 134 N.M. 710, 82 P.3d 77. We note, however, that where factual issues are intertwined with the double jeopardy analysis, the factual determinations made during the trial are subject to a deferential substantial evidence standard of review. *State v. Rodriguez*, 2006-NMSC-018, ¶ 3, 139 N.M. 450, 134 P.3d 737.

**{27}**    Defendant argues that double jeopardy was violated because he was charged with multiple violations of the same statute based upon a single course of conduct. *See State v. Gallegos*, 2011-NMSC-027, ¶¶ 28-50, 149 N.M. 704, 254 P.3d 655 (recognizing the unit of prosecution test for multiple charges under the conspiracy statute); *State v. DeGraff*, 2006-NMSC-011, ¶ 25, 139 N.M. 211, 131 P.3d 61 (holding that there are two types of double jeopardy cases with regard to multiple punishments:  (1) when a defendant is charged with multiple violations of the same

statute based on a single course of conduct referred to as "unit of prosecution" cases; and (2) when a defendant is charged with violations of multiple statutes for the same conduct referred to as "double-description" cases (internal quotation marks and citation omitted)). It is not disputed that we are dealing with a unit of prosecution case. However, the State responds that double jeopardy was not violated because the acts of anal penetration and vaginal penetration constitute separate offenses. We agree.

{28} A unit of prosecution challenge uses a two-step inquiry. First, we ask whether the unit of prosecution is clearly defined by the statute at issue and, second, whether the charged acts were sufficiently distinct to justify multiple punishments under the same statute. *State v. Swick*, 2012-NMSC-018, ¶ 33, 279 P.3d 747; *State v. Stewart*, 2005-NMCA-126, ¶ 13, 138 N.M. 500, 122 P.3d 1269. In this case, the only issue is whether the acts of separate penetrations to different orifices were sufficiently distinct to justify multiple punishments under the same statute. *State v. Bahney*, 2012-NMCA-039, ¶ 17, 274 P.3d 134 (stating that "if no legislative guidance is apparent, [the court must determine] whether a defendant's acts are separated by sufficient indicia of distinctness to justify multiple punishments under the same statute" (internal quotation marks and citation omitted)), *cert. denied*, 2012-NMCERT-003, 293 P.3d 183. The evidence supported the conclusion that Defendant penetrated Victim's anus and vagina. It is recognized that such separate penetrations constitute separate and distinct

18

acts of CSP. *See Herron v. State,* 111 N.M. 357, 362-63, 805 P.2d 624, 629-30 (1991) (holding that penetrations of separate orifices with the same object constitute separate offenses); *State v. Armendariz,* 2006-NMCA-152, ¶ 19, 140 N.M. 712, 148 P.3d 798 ("Because [the d]efendant's penis penetrated [the v]ictim's mouth and vagina, the evidence supports the conclusion that the CSP II offenses were separate and distinct."); *see also State v. Wilson*, 117 N.M. 11, 14, 868 P.2d 656, 659 (Ct. App. 1993) ("Under *Herron,* penetrations of separate orifices with the same object constitute separate offenses. Therefore, the acts of anal intercourse, sexual intercourse, and at least one instance of fellatio constitute separate offenses under *Herron.*"). As a result, Defendant's two convictions did not violate double jeopardy.

**IV.   Sufficiency of the Evidence**

{29}   Defendant's final argument attacks the sufficiency of the evidence for his convictions. In reviewing the sufficiency of evidence supporting a conviction, we review the evidence in the light most favorable to the prevailing party. *Rojo*, 1999-NMSC-001, ¶ 19. "[S]ufficient evidence to uphold a conviction exists where substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to [a] conviction." *State v. Salazar*, 1997-NMSC-044, ¶ 44, 123 N.M. 778, 945 P.2d 996 (internal quotation marks and citation omitted). "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion."

19

*Rojo*, 1999-NMSC-001, ¶ 19. On appeal, we do not weigh the evidence or substitute our judgment for that of the fact finder so long as the evidence is sufficient to support the verdict. *State v. Akers*, 2010-NMCA-103, ¶ 32, 149 N.M. 53, 243 P.3d 757.

{30}    Defendant admitted to having intercourse with Victim, denying only the non-consensual nature of the encounter. The jury did not believe his story. We recognize that Defendant told a differing story from Victim but "[t]he fact finder may reject [the] defendant's version of the incident." *State v. Sutphin*, 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988). "An appellate court does not evaluate the evidence to determine whether some hypothesis could be designed which is consistent with a finding of innocence." *Id.* at 130-31, 753 P.2d at 1318-19. The evidence against Defendant amply supports the verdict.

**CONCLUSION**

{31}    For the foregoing reasons, we affirm Defendant's convictions.

{32}    **IT IS SO ORDERED.**


_____
**TIMOTHY L. GARCIA, Judge**


**WE CONCUR:**


_____
**JAMES J. WECHSLER, Judge**

20

_____

**JONATHAN B. SUTIN, Judge**